Arthur N. ARONSEN,
Plaintiff-Appellant,

v.

CROWN ZELLERBACH, a corporation,
Defendant-Appellee.

No. 78–1621.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1980.

Decided Nov. 23, 1981.

Marvin Stender, Garry, Dreyfus, McInternan, Brotsky, Stender, Herndon & Walsh, Inc., San Francisco, Cal., argued, for plaintiff-appellant; David E. Pesonen, San Francisco, Cal., on brief.

Ralph H. Baxter, Jr., Orrick, Herrington & Sutcliffe, Inc., San Francisco, Cal., argued, for defendant-appellee; James Haynes, San Francisco, Cal., on brief.

Before TANG and PREGERSON, Circuit Judges, and KELLEHER,* District Judge.

TANG, Circuit Judge:

This is an appeal from the dismissal of an action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA). On motion for summary judgment, the district court dismissed the action on the ground that Plaintiff Aronsen's "notice of intent to sue" was untimely filed with the Secretary of Labor, thus, failing to satisfy a prerequisite to suit under the ADEA. Because the determination of the date on which the unlawful act occurred is not free of factual dispute, we reverse.

## I.

Plaintiff Aronsen worked as a Research Associate for Crown Zellerbach (Zellerbach) and his duties included seeking out new applications for Zellerbach goods and developing new products. He had worked for Zellerbach 28 years, his entire working life since graduating from college. By 1975, at age 52, he was earning $36,300 per year, plus benefits, bringing his total compensation to $42,500.

In his complaint, Aronsen alleged that Zellerbach terminated him solely on the basis of his age pursuant to its general plan to replace employees nearing retirement age with younger employees. Aronsen further complained that Zellerbach terminated him on April 21, 1976, and that he gave the required notice of intent to sue to the Secretary of Labor on January 19, 1977 (filed Jan. 24, 1977), about 270 days later. This asserted date is within the 300 day time period of 29 U.S.C. § 626(d)(2) but not within the 180 day period enumerated in § 626(d)(1). Affidavits and depositions in the record, however, suggest that at a meeting a year earlier, in the spring of 1975, a Zellerbach vice-president informally told Aronsen that he was being terminated. It is undisputed that after March 31, 1975, Aronsen did no regular work for the company, although he still received company paychecks. On March 31, 1976, Aronsen was officially terminated. At that time, his "regular" payments ceased and his payments for accumulated vacation benefits began, lasting until April 21, 1976, the date

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

noted by Aronsen in his complaint as marking his termination with Zellerbach. Because the March 31, 1976 date is also within the 300 day period, the notice would have been timely filed if that were the operative date. March 31, 1975, however, is far outside the 300 day limit. As a matter of law, the district court concluded that termination, and hence the unlawful practice, occurred at a meeting on or before March 31, 1975.

At the meeting on March 31, 1975, executive vice-president Mitchell allegedly told Aronsen that he was being terminated and that Aronsen would be given a choice between either taking a demotion to another position or accepting termination and receiving Zellerbach's assistance in finding another position, while maintaining the same payroll and benefits status during the transition period. Aronsen chose the latter alternative. His transition period, originally scheduled to last six months, was extended to March 31, 1976. The March 31, 1975 meeting and "termination" were not memorialized by any formal record notifying Aronsen.

Between March 31, 1975 and March 31, 1976, Aronsen was on the payroll at his normal salary. The record does not show whether his status was changed on the company's personnel records. He did not perform his former duties, but he did retain the perquisites of his position: office, secretary, travel, and expense account. Aronsen performed one brief assignment for Zellerbach in the summer of 1975 and took outside consulting jobs, but always with the permission of vice-president Mitchell.

In a letter dated March 18, 1976, senior vice-president Jamieson wrote to Aronsen confirming a March 2, 1976 discussion "regarding [Aronsen's] termination of employment with Crown Zellerbach on March 31, 1976." [1] The letter also referred to the period between March 31, 1975 and March 31, 1976 as a "terminal leave of absence

with pay." In its briefs and motions, Zellerbach also described its payments to Aronsen during this period as "severance benefits." The district court relied on these characterizations, although, so far as the record shows, Zellerbach's personnel records contain no change in Aronsen's status to reflect "leave" or "severance."

The district court concluded that March 31, 1975 was the termination date based on the following factors: 1) on or by that date Aronsen was told he was being terminated; and 2) on that date his active performance of work for the company ceased. The court further ruled that Zellerbach's actions after that date did not toll the 300 day period under the equitable tolling doctrine. Accordingly, the district court dismissed the action because the notice of intent to sue was not filed within 300 days of March 31, 1975.

## II.

The first issue we address concerns the length of the statutory filing period in this case. If 180 days instead of 300 days is the applicable period then we need not reach the other issues because even the occurrence dates advocated by Aronsen are beyond a 180 day period.

The ADEA requires a grievant to file a "notice of intent to sue" within 180 days of an alleged statutory violation or, in a deferral state, within 300 days. See 29 U.S.C. § 626(d)(1), (2) (1976). In Bean v. Crocker National Bank, 600 F.2d 754 (9th Cir. 1979), we construed the deferral state time requirement to require filing with the Secretary of Labor within 300 days. Id. at 757–59; see Naton v. Bank of California, 649 F.2d 691, 694 n.2 (9th Cir. 1981). Since Bean, two other circuits have decided otherwise, holding that the grievant must commence proceedings with the state agency within 180 days in order to trigger the extended 300 day federal filing period.[2] Zellerbach urges us to reconsider our position and conform to the approach in these

1. We cannot determine from the record when the letter was received by Aronsen.

2. See Ewald v. Great Atlantic & Pacific Tea Co., Inc., 620 F.2d 1183, 1186–87 (6th Cir. 1980), judgment summarily vacated, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981); Cic-

circuits. After re-examining the statute and considering intervening developments in the interpretation of the ADEA and the analogous filing periods under Title VII, however, we reaffirm *Bean's* holding that in deferral states ADEA grievants have 300 days to file.

Section 626(d) of the ADEA, as in effect at the time of Aronsen's suit[3] provided:

> (d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
>
> > (1) within one hundred and eighty days after the alleged unlawful practice occurred, or
> >
> > (2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d) (1976).

This statutory language plainly states that grievants in section 633(b) cases (*i. e.,* complaints arising in deferral states) have 300 days to file. Unless section 633 requires a different interpretation, we see no reason to depart from the plain congressional language of section 626(d). Our decision in *Bean* so held, rejecting the interpretation that a grievant first must commence state proceedings within the 180 day period of section 626(d)(1) in order to qualify for the 300 day filing period of section 626(d)(2). *Bean,* 600 F.2d at 757–59.

Section 14(b) of the ADEA, 29 U.S.C. § 633(b) (1976), provides that in cases occurring in deferral states no suit may be brought under section 626 until 60 days after proceedings have been commenced before the state agency, unless the state proceedings had terminated earlier.[4] In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Supreme Court held that section 633(b) required grievants in deferral states to resort to state administrative proceedings before bringing suit in federal court. *Id.* at 754–58, 99 S.Ct. at 2070–72. The Court also held, however, that such commencement of state proceedings for federal ADEA pur-

---

cone v. Textron, Inc., 616 F.2d 1216, 1219–1221 (1st Cir. 1980), *judgment summarily vacated,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981).

3. In 1978, this section was amended so that only a "charge alleging unlawful discrimination" need be filed. *See* 29 U.S.C. § 626(d) (West Supp. 1981). According to the legislative history of this amendment, the charge requirement is satisfied by a written statement identifying the potential defendant and describing generally the action believed to be discriminatory. House Conf.Rep. No. 95–950, 95th Cong., 2d Sess. 12, *reprinted in* [1978] *U.S. Code Cong. & Ad. News* 504, 534. The change from "notice of intent to sue" to "charge" was not intended to alter the basic purpose of the prior law. *Id.*

Also, under a 1978 reorganization plan, filings are now with the Equal Employment Opportunity Commission (EEOC) rather than the Secretary of Labor. 1978 Reorg. Plan Nos. 1, 43 Fed.Reg. 19807, 92 Stat. 3781, *reprinted in* 5 U.S.C. Appendix II, at 157–163 (West Supp. 1981).

At any rate, this appeal must proceed under the unamended version because Aronsen's action was brought prior to the amendment's effective date, April 6, 1978. *See Naton,* 649 F.2d at 694 n.2.

4. That section provides:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided,* That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

29 U.S.C. § 633(b) (1976).

poses need not be timely or effectual under state law. *Id.* at 758–64, 99 S.Ct. at 2072–75.

Although the *Evans* decision is instructive, it does not control the issue before us. Section 633(b) pertains to the relationship between commencing state proceedings in deferral states and filing a federal *suit*, not to the relationship between commencing state proceedings and filing a federal notice or charge with the Secretary of Labor. Nor did *Evans* directly address that latter relationship, except to point out that ADEA grievants may file with the state agency before, *simultaneously*, or even *after* they file notice with the Secretary of Labor. *Id.* at 756 & n.4, 99 S.Ct. at 2072 & n.4 (emphasis added).[5] Indeed, as *Bean* indicated, the only plausible inference to be derived from *Evans* is that "compliance with state time limitations must be deemed irrelevant for purposes of determining whether a complainant has 180 or 300 days to file notice of intent to sue with the Secretary." *Bean*, 600 F.2d at 759.

Nothing in section 633(b), therefore, requires reading section 626(d)(2) in other than a plain manner. Nor does the legislative history of section 626(d) give any reason to believe any other interpretation was intended by Congress. *See Ewald v. Great Atlantic & Pacific Tea Co.*, 620 F.2d 1183, 1189–1190 (6th Cir. 1980) (Jones, J., dissenting). Nevertheless, since *Bean* was decided, two other circuits have held that section 626(d) must be read to imply a requirement that proceedings be commenced within 180

days of an alleged violation in order to qualify for the 300 day federal filing period. *See Ewald v. Great Atlantic & Pacific Tea Co.*, 620 F.2d 1183, 1186–87 (6th Cir. 1980), *judgment summarily vacated*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981); *Ciccone v. Textron, Inc.*, 616 F.2d 1216 (1st Cir. 1980), *judgment summarily vacated*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981). Those courts concluded that the ADEA's legislative purpose compelled them to ignore the plain meaning of section 626(d). *See Ewald*, 620 F.2d at 1186–87; *Ciccone*, 616 F.2d at 1220–21. In *Ewald*, the Sixth Circuit held that a grievant must file with either the state or federal agency within 180 days in order to qualify for the additional 120 day filing time.[6] In *Ciccone*, the First Circuit held that a grievant must file with the state agency within 180 days in order to secure the 120 day filing extension with the Secretary of Labor.

We agree that legislative purpose is important in statutory construction. Indeed, sometimes a statute's legislative purpose is contrary to the statute's plain meaning. *See United Steelworkers of America v. Weber*, 443 U.S. 193, 201–04, 99 S.Ct. 2721, 2726–28, 61 L.Ed.2d 480 (1979). This, however, is not such a case. The purposes of the filing requirements of the ADEA are not thwarted, hindered, or impaired by a literal reading of section 626(d)(2). Although the legislative history of the 1967 enactment of the ADEA does not fully illuminate the purpose behind section 626(d),[7]

---

5. In this respect, filing and the 60 day delay period under the ADEA are unlike the cognate provisions of Title VII. *See Mohasco Corp. v. Silver*, 447 U.S. 807 at 818–824, 100 S.Ct. 2486 at 2493–2496, 65 L.Ed.2d 532 (1980); 42 U.S.C. § 2000e–5(c) (1976).

6. The filing requirement imposed in *Ewald* for the grievant who choses not to institute state proceedings within 180 days is paradoxical. In that situation, according to the *Ewald* majority, a grievant must file notice with the Secretary within 180 days of the violation in order to retain the advantage of the 300 day deadline. Obviously, there is no utility in a 300 day deadline if in order to preserve that schedule, an individual must first file an identical notice within 180 days of the alleged violation.

7. Although the result of our review of the legislative history is consistent with our earlier delineation of the purpose behind section 626(d) in *Bean*, the question is whether it is proper in this case to rely on legislative history to discern a congressional purpose more restrictive than that yielded from a plain reading of the statute.

In interpreting statutes, we are not free to substitute legislative history for the language of the statute. Statutory interpretation must begin with the statute itself. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). The court in *Ciccone* inverted this process. Although there is no *per se* bar preventing resort to legislative history, even when the statute, as here, is plain on its face, *see United States v. American Trucking Ass'n, Inc.*, 310 U.S. 534, 544, 60 S.Ct. 1059,

*see* H.Rep. No. 805, 90th Cong., 1st Sess. 4, *reprinted in* [1967] U.S. Code Cong. & Ad. News 2213, 2218–19, 2224, the history behind the 1978 amendments to section 626(d) confirms the plain meaning of the statute:

> Section 7(d) of the Act requires that an individual must give the Department of Labor notice of intent to file suit within 180 days after the alleged unlawful practice occurs. This period is extended to 300 days where the alleged unlawful practice occurs in a state which has an age discrimination statute which provides a remedy.

House Conf.Rep. No. 95–950, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S. Code Cong. & Ad. News 504, 523–24. The express Congressional purpose of section 626(d) is "to provide the Department with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practice through informal methods of conciliation". *Id.* at 534. The *Ewald* and *Ciccone* construction of the statute is not necessary to achieve this purpose, because "[a] claim can hardly be labelled 'old' after 300 days, when the statute of limitations for ADEA claims is two years". *Ewald*, 620 F.2d at 1189 (Jones, J., dissenting).

■ *Ewald* and *Ciccone* also relied upon analogy to the similar filing provisions in Title VII, under which a complainant has 180 days to file with the EEOC in a nondeferral state and 300 days in a deferral state. *See* 42 U.S.C. § 2000e–5(e). The *Ewald* and *Ciccone* courts correctly stated that the provisions of Title VII and cases construing them may be used to interpret the ADEA.[8] At that time, however, a dispute existed on the issue whether section 2000e–5(e) requires a grievant to commence state pro-

ceedings within 180 days of an alleged violation in order to have the 300 days for filing the federal charge. *Compare Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1233 (8th Cir. 1975) (en banc) (180 days) *with Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1329–1333 (4th Cir. 1976) (300 days). Relying heavily on the rationale of the *Olson* case, the *Ewald* and *Ciccone* courts held that the ADEA filing periods should be construed as *Olson* construed the Title VII filing periods.

The *Olson* court's interpretation of the Title VII filing period, however, has not been accepted by all other circuits considering the issue. *See Doski*, 539 F.2d at 1330–33; *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1087 (2d Cir. 1979) (300 days to file), *rev'd on other grounds, Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In our recent decision in *Wiltshire v. Standard Oil Co.*, 652 F.2d 837 at 839 (9th Cir. 1981), we rejected *Olson* and found that 300 days was the proper time limit.

Moreover, in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court disapproved of *Olson* because it had imposed filing restrictions not found in the statute's text:

> This language has been construed to require that the filing with the state [or federal] agency be made within 180 days. Although that construction is consistent with the general rule announced at the beginning of § 706(e), and is supported by one Congressman's understanding of the procedures at the time of the 1972 amendment to that section, see 1972 Leg. Hist., at 1863 (remarks of Rep. Dent), Congress included no express requirement that state proceedings be initiated by any specific date in the portion of the

---

1064, 84 L.Ed. 1345 (1940); *but see T.V.A. v. Hill*, 437 U.S. 153, 184–85, 184 n.29, 98 S.Ct. 2279, 2296–97, 2296 n.29, 57 L.Ed.2d 117 (1978), we question *Ciccone's* reliance on legislative history to restrict access to the federal courts by imposing time restraints patently absent from and contrary to the statute's text.

8. The Supreme Court in *Lorillard v. Pons*, 434 U.S. 575, 583–84, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1978) suggested that remedial and

procedural provisions of Title VII were not to be used as interpretive aids in understanding their remedial and procedural counterparts in the ADEA. It has apparently abandoned this stance, however, because in *Evans* the Court relied on its previous construction of Title VII procedural provisions in interpreting similar ADEA provisions. *See Evans*, 441 U.S. at 755–56, 99 S.Ct. at 2071–72.

subsection that relates to time limitations in deferral States. Further, there are contemporaneous indications in the legislative history, which, while not authoritative, contradict Representative Dent's views.

In any event, we do not believe that a court should read in a time limitation provision that Congress has not seen fit to include, at least when dealing with "a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679. In contrast to the construction of the statute we adopt today, the *Olson* approach, urged upon us by petitioner and amicus, is not compelled by the plain meaning of the statutory language.

*Id.* at 816 n.19, 100 S.Ct. at 2492 n.19 (citations omitted). *See id.* at 814–15 n.16, 100 S.Ct. at 2490–91 n.16.[9] If the restrictive approach of *Olson* is not supported in Title VII, it is surely dubious to import like restrictions into the ADEA filing deadline

provisions. Indeed, the Court in *Mohasco* clearly indicated its disagreement with *Ciccone* by equating it with *Olson*. *See Mohasco*, 447 U.S. at 814–15 n.16, 100 S.Ct. at 2490–91 n.16.[10]

The dictum in *Mohasco* effectively undercuts the authority and rationale of *Olson* and the derivative *Ewald* and *Ciccone* decisions. It is consistent with the general principle of statutory construction that a court should not add language to an unambiguous statute absent a manifest error in drafting or unresolvable inconsistency. *See* 2A J. Sutherland, Statutory Construction § 47.36, at 164 (Sands ed. 1973).[11] This principle was tacitly observed by the Supreme Court in its recent rulings on the *Ciccone* and *Ewald* decisions. *See Ewald v. Great Atlantic & Pacific Tea Co., Inc.*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981) (summarily vacating judgment and remanding for further consideration in light of *Mohasco*); *Ciccone v. Textron, Inc.*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1981) (same). We therefore reaffirm the

---

**9.** In *Mohasco*, the question before the Supreme Court was whether a charge may be "filed" with the EEOC for 42 U.S.C. § 2000e–5(e) purposes only after the waiting requirements of 42 U.S.C. § 2000e–5(c) are met. Section 2000e–5(c) requires that, in deferral states, charges be referred to the state agency for a limited period before the EEOC charge is "filed." The Second Circuit had held that for purposes of meeting the time limit of section 2000e–5(e), the initial receipt by the EEOC would be deemed the filing rather than the formal filing after section 2000e–5(c) referral. The Supreme Court, three justices dissenting, reversed and held that the charge was filed for section 2000e–5(e) only after section 2000e–5(c) requirements were met. *Mohasco*, 447 U.S. at 818–824, 100 S.Ct. at 2493–2496.

The *Mohasco* problem does not arise under ADEA filing requirements because its waiting provision is drafted with reference to filing the federal lawsuit and does not affect filing the charge (or formerly, notice of intent to sue). *Compare* 29 U.S.C. §§ 633(b), 626(d) (West Supp. 1981) *with* 42 U.S.C. § 2000e–5(c) (1976) *and* 42 U.S.C. § 2000e–5(e) (1976). Thus, an ADEA grievant may file the federal charge within 300 days and thereafter commence state proceedings. Under *Evans*, that state filing need not be timely under state law to fulfill the requirement of section 633(b). Then, as long as the grievant waits 60 days or until state proceedings otherwise earlier terminate, the

grievant may file federal suit under section 626(e), the ADEA's statute of limitations.

**10.** We are not unaware of the following language contained in *Evans*:

> In any event, even if the risk of bypass of state agencies were real, which it is not, states could readily avoid the possibility by extending their limitation periods to 180 days and by tolling their statutes of limitations upon the filing of a timely charge with the Department of Labor.

*Id.* at 764 n.11, 99 S.Ct. at 2075 n.11. Although this statement is cryptic, it arguably supports the proposition that a grievant must file with a state or federal agency within 180 days in order to secure the 120 day extension of section 626(d). Nevertheless, this language is entirely gratuitous and has been firmly rebutted by the Court's subsequent dictum in *Mohasco*.

**11.** The power to substitute or add is denied where the word substituted or added affects the essence of the act or where the statute is unambiguous. *Sutherland, supra*, § 47.36, at 164. *See Harris v. Commissioner*, 178 F.2d 861, 863–64 (2d Cir. 1949) (Hand, J.) (error or omission must be plain before substitution allowed); *Davies v. Citizen's Trust Co.*, 242 N.Y. 196, 197–98, 151 N.E. 205, 206 (1926) (words that would defeat statutory purpose will not be inserted into act). Both criteria are present in the case of the statute in issue.

holding of *Bean v. Crocker National Bank* that in deferral states ADEA grievants have 300 days within which to file their charges (or formerly, their notice of intent to sue). *See Davis v. Calgon Corp.*, 627 F.2d 674, 676–77 (3rd Cir. 1980), *cert. denied*, 449 U.S. 1101, 101 U.S. 897, 66 L.Ed.2d 827 (1981).

## III.

### A.

In order to be timely, Aronsen's "notice of intent to sue" must have been filed within 300 days "after the alleged unlawful practice occurred". 29 U.S.C. § 626(d)(2) (1976). *See* 29 U.S.C. § 626(d)(2) (West Supp. 1981). The date of his notice of intent to sue was January 19, 1977. Accordingly, the second question for our consideration is: On what date did the alleged unlawful practice occur and when did Aronsen's action accrue? If it occurred earlier than 300 days before January 19, 1977, Aronsen's notice was untimely.

On the record as developed below, five dates appear as possibilities: 1) March 31, 1975; 2) March 2, 1976; 3) March 18, 1976; 4) March 31, 1976; and 5) April 21, 1976. Depending on full factual development, other dates may also exist. The March 31, 1975, March 2, 1976 and March 18, 1976 dates are outside the 300 day limit and would make Aronsen's notice untimely. Computed from the other two dates, however, notice would have been timely. Zellerbach argues, and the district court agreed, that the alleged unlawful practice (*i. e.*, discharge) occurred at the March 31, 1975 meeting when Aronsen was told he was being terminated and after which his services in fact ceased. Aronsen argues that the discharge occurred when he was taken off the payroll on April 21, 1976, or, alternatively, on March 31, 1976 when he had been informed in writing of termination and when his regular payments stopped and payment for accrued vacation time began. On March 2, 1976, Aronsen was allegedly informed by senior vice-president Jamieson that his employment would be terminated on March 31, 1976. At some point subsequently, Aronsen apparently received a letter, dated March 18, 1976, confirming the earlier meeting with Jamieson.

Zellerbach moved below for dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6). Because the district judge considered affidavits and other matters outside the pleadings, however, the order must be considered a summary judgment under Federal Rule of Civil Procedure 56. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Solinger v. A&M Records, Inc.*, 586 F.2d 1304, 1308 (9th Cir. 1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). Although there appears to be factual dispute concerning what transpired or some dispute concerning the interpretation of the facts, the district court determined that as to "controlling facts" there was no dispute. It concluded, therefore, that it would determine when the unlawful act occurred as a matter of law. The district court held that discharge occurred on March 31, 1975, thus leaving Aronsen's notice untimely.

In summary judgment, there must be no issue of any material fact and the moving party must demonstrate the right to judgment as a matter of law in the context of undisputed facts. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). In determining whether material factual dispute exists, facts and inferences must be viewed most favorably to the non-moving party. *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977). On a motion for summary judgment, neither an appellate court nor a trial court are permitted to weigh the evidence, pass upon credibility, or speculate as to the ultimate findings of fact. *Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (9th Cir. 1977). We need only determine that a result other than the district court's conclusion is possible under the facts and applicable law to require a reversal and remand.

In the district court's ruling, the controlling facts were that Aronsen had notice of his termination at the March 31, 1975 meet-

ing and after that date, except for one brief assignment, he did no work for the company. To these facts, the district judge applied the law as set forth in *Bonham v. Dressler Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), and ruled that Aronsen's discharge occurred on March 31, 1975.

In *Bonham* the Third Circuit ruled that where unequivocal notice of termination and the employee's last day of work coincide, then "the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage." *Bonham*, 569 F.2d at 191. This rule of unequivocal notice of termination plus cessation of services has been widely followed. *See, e.g., Wilkerson v. Siegfried Insurance Agency, Inc.*, 621 F.2d 1042, 1044–45 (10th Cir. 1980); *Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785, 788 (5th Cir. 1980), *aff'd on other grounds*, 640 F.2d 584, 585, 587–595 (5th Cir. 1981) (en banc); *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir. 1977); *cf. Ricks v. Delaware State College*, 605 F.2d 710 (3d Cir. 1979), *rev'd*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (applying similar rule in Title VII).

Applying the *Bonham* rule to the facts of Aronsen's case, the district court ruled that the conditions of the rule—notice of termination plus cessation of services—were met on March 31, 1975, leaving that day as the date of discharge. It rejected Aronsen's argument that the rule of *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975), should be applied. In *Moses*, the court favored an approach that would create an easily ascertainable date by adopting the date of official termination on the company's records as the date of discharge. *Moses*, 525 F.2d at 94.

Our examination of the issue has led us to conclude that neither the *Bonham* nor *Moses* approach adequately states the correct principles of law. This conclusion is buttressed by the Supreme Court's latest pronouncements in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), on the analogous Title VII accrual periods.[12] Moreover, even if we assumed that the district court applied the correct principles of law, we disagree with its conclusion that Zellerbach demonstrated its right to judgment as a matter-of-law in the context of undisputed fact. We therefore reverse the grant of summary judgment.

### B.

In attempting to formulate a rule on ADEA accrual periods, both *Bonham* and *Moses* sought to erect bright-line, objective standards that would unmistakably establish, for litigants and the courts, the exact date on which the alleged unlawful practice occurred. The Supreme Court's opinion in *Ricks*, however, indicates that mechanical formulae will not suffice to identify accurately the date of the unlawful practice.

In *Ricks*, a college teacher who had been denied tenure brought a Title VII action contending that the college's adverse tenure decision had been engendered by national origin discrimination. Finding that the only unlawful employment practice alleged was the college's decision to deny tenure, the district court held Ricks' action untimely because he had failed to file his complaint with the EEOC within the applicable time limits even though his employment contract did not expire until months after he had received notice of termination. Expressly relying upon *Bonham*, the Third Circuit reversed, holding that a terminated employee who is still working should not be

---

**12.** In *Naton v. Bank of California*, 649 F.2d 691, 695 (9th Cir. 1981), we adopted the rule set forth in *Bonham* but expressly reserved the question whether *Bonham* could be applied when unequivocal notice of discharge preceded cessation of services. *Id.* at 695 n.3 (noting conflict between *Ricks*, 449 U.S. at 256–261,

101 S.Ct. at 503–06 and *Bonham*, 569 F.2d at 192). We reach the issue today because the district court found that, despite his inactive status with Zellerbach, Aronsen did perform a brief assignment for the company at an unspecified date after March 31, 1975.

required to consult a lawyer or file charges of discrimination while still working, even though informed of the employer's present intent to terminate in the future. *Ricks,* 605 F.2d at 712.

The Supreme Court reversed and ordered reinstatement of the district court's original order. In response to Ricks' claim of a "continuing violation" under which the limitations period would not begin to run until his contract expired, the Court stated that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks,* 449 U.S. at 504, 101 S.Ct. at 504. The Court squarely identified the alleged act of discrimination as the date the "tenure decision was *made and communicated to Ricks*", *id.* at 504 (emphasis added and footnote deleted), and clarified the standard under which filing limitations periods commence:

> Complaints that employment termination resulted from discrimination can present widely varying circumstances. In this case the only alleged discriminatory act is the denial of tenure sought by a college professor, with termination of employment not occurring until a later date. The application of the general principles discussed herein necessarily must be made on a case-by-case basis.

*Id.* at —— n.9, 101 S.Ct. at 504 n.9. Accordingly, " '[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts [become] most painful.' " *Id.* at 504 (quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979)) (emphasis added by Court).

In articulating this standard, the Court clearly rejected the "final date of employment" rule advocated by the Third and Fifth Circuits in *Ricks* and *Bonham* respectively, and also, we feel, the "official date of termination" rule espoused by the Tenth Circuit in *Moses* :

> Although [these] view[s] [have] the virtue of simplicity, . . . [our] discussion . . .

demonstrates [their] fallacy as a rule of general application. Congress has decided that time limitations periods commence with the date of the 'alleged unlawful employment practice.' Where, as here, the only challenged employment practice occurs before the termination date, the limitations periods necessarily commence to run before that date. It should not be forgotten that time-limitations provisions themselves promoted important interests; 'the period allowed for suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.'

*Ricks,* 449 U.S. at 259–260, 101 S.Ct. at 505 (citations and footnotes omitted).

We think the Court has indicated beyond doubt that in Title VII and, analogously, ADEA discrimination suits, inquiry for purposes of determining when the limitations period begins to run must center on the date when the employee has notice of the unlawful act; neither cessation of work nor official termination noted on company personnel records is singularly relevant to this inquiry. Judicial review in each case cannot be facilitated by bright-line approaches because, as the Court has indicated, such formulae tend to obscure and even distort congressional intent. We hold therefore that in ADEA suits, the applicable limitations period is activated once the employee knows or should know that an unlawful employment practice has been committed. Other criteria, such as cessation of services, are relevant in aiding a court to set the operative date only when they indicate that the employee knew or should have known of the commission of the unlawful employment practice and cannot serve to fix mechanically the operative date. Accordingly, the rigid components of the *Moses* and *Bonham* tests are useful only to the extent that courts must rely on objective manifestations of intent to determine subjective knowledge.[13] As the court

---

13. The *Moses* test required a change in personnel records in order to activate the accrual period. The court in *Bonham,* however, correctly noted that a change in personnel records

in *Ricks* has indicated, review must proceed under a case-by-case approach. Under such instruction, we perceive no artificial limit to the range of objective manifestations that could indicate to a court when an employee knows or should know of an unlawful employment practice.[14] Of course, proof of an employee's receipt of written notice of termination would clearly shorten the inquiry concerning the employee's knowledge of termination date (though not necessarily knowledge of an unlawful employment practice)[15] and render more manageable both the employer's burden of establishing notice and the court's task on review. We do not read the Court's language in *Ricks* as a requirement that employers provide express written notice of termination in every case,[16] but the Court in *Ricks* observed that an employer's letter to Ricks provided "explicit notice that his employment would end upon [the terminal contract's] expiration." 449 U.S. at 258, 101 S.Ct. at 504.

■ Even if we were to assume that the district court in this case applied the correct

law,[17] we cannot agree with its conclusion that Zellerbach is entitled to summary judgment, because the key fact in issue—whether or when Aronsen knew or should have known of the unlawful practice—is not only disputed but inadequately presented for appellate review.

Although Zellerbach contends that Aronsen was informally informed of his termination by March 31, 1975, Aronsen disputes this. The trial record reveals Aronsen's argument that he was not specifically informed before March 31, 1975, of his termination. Under these circumstances, a factual dispute exists on the issue whether Aronsen knew or should have known on or before March 31, 1975 that he was being terminated or that he was being subjected to an unlawful practice.[18]

Resolving all reasonable doubts in favor of Aronsen, as we must in reviewing a grant of summary judgment, we reverse the district court's determination[19].

---

is not an objective manifestation of employee intent because there can be no guarantee that an employee knows the status of his or her personnel records: "[W]e would be wary of any approach which determines the timeliness of an employee's suit against his employer solely on the basis of records which are within the exclusive control of the employer." *Id.* at 191.

**14.** *See, e. g., Wilkerson,* 621 F.2d at 1044–45 (plaintiff began vacation on termination date); *Coke,* 616 F.2d at 788 (formal notice and demotion commenced with unlawful practice); *Payne,* 560 F.2d at 199 (company perquisites relinquished).

**15.** It is conceivable that an employee could have unequivocal notice of termination without any immediate suspicion that the termination was actuated by age discrimination. This situation, however, must be distinguished from contexts in which an employer asserts misleading misrepresentations concerning reinstatement. Such misrepresentations are only relevant on the issue of equitable tolling. *See Naton,* 649 F.2d at 695 n.4.

**16.** Beyond receiving an expressly "terminal" contract, Ricks also received a letter formally communicating his prospective termination. *See Ricks,* 449 U.S. at 253, 101 S.Ct. at 501 n.2. The Court refused to speculate whether an earlier date—when the Board of Trustees apparently informally communicated to Ricks their decision to deny him tenure—could operate as

the operative point in time. *See id.* at 506 n.17. Although unclear, the Court's reticence might have originated from a desire to avoid finding that informal, oral notice could suffice. Even so, the Court's commitment to case-by-case analysis to determine the operative date, *Ricks,* 449 U.S. at 258 n.9, 101 S.Ct. at 504 n.9, would tend to conflict with such an interpretation, because in *Ricks,* the earlier, informal notice was directly referable to a consistent extrinsic event—the vote of the Board of Trustees.

**17.** Although we cannot approve of the district court's reliance upon *Bonham,* we note that the lower court correctly concluded that resolution of the issue must be a case-by-case process and that the primary focus of inquiry must be on the plaintiff's knowledge, not on an official company termination date.

**18.** Aronsen did state in an affidavit that, after March 2, 1976, "if I were to make any complaint to the California Fair Employment Practices Commission or to the U.S. Department of Labor, Crown would promptly terminate me ...." Although this implies that Aronsen knew his termination was based on age discrimination, the standard of review on summary judgment precludes such a conclusion.

**19.** Similarly, in *Clark v. West Chemical Products, Inc.,* 557 F.2d 1155 (5th Cir. 1977), the court held that summary judgment for the date

## IV.

On remand, the issue of equitable tolling may arise. The district court apparently found that the ADEA filing period was not tolled during the year after the March 31, 1975 meeting.[20] We recently held that ADEA filing periods are subject to equitable modification. *Naton*, 649 F.2d at 695–96. Because the facts in this case do not foreclose application of equitable tolling, the district court's grant of summary judgment to Zellerbach on this basis must also be reversed.

In ADEA cases, "equitable tolling or estoppel almost invariably involves the credibility of the various witnesses [and] [c]redibility is difficult to determine from affidavits or depositions." *Wilkerson*, 621 F.2d at 1045; *cf. Naton*, 649 F.2d at 696 (declining to evaluate tolling issue for first time on appeal).[21] Accordingly, summary judgment seldom will be appropriate when tolling is in issue. On review of a grant of summary judgment, it must appear that the facts as alleged could not reasonably be construed as permitting equitable estoppel or tolling. *See Coke*, 640 F.2d at 595–96. *Jablon*, 614 F.2d at 682.

Although there was some disagreement over what exactly was said at the March 31, 1975 meeting, the basic facts are not significantly disputed. Based on those facts, Aronsen offers the inferred fact that he was inhibited from filing a notice with the ADEA for fear of losing his "terminal year" severance pay, losing his eligibility for early retirement, and losing company aid in finding other work. Whether this inhibition was reasonable under the circumstances and whether it was the result of a plan that would intentionally or foreseeably lull [22] grievants and delay ADEA filings are factual questions pertinent to the equitable estoppel issue that are improper for summary judgment treatment. The facts could support an estoppel argument. Similarly, if Aronsen had been led to believe by company actions that his "termination" was not irrevocable, equitable estoppel might have been appropriate. On remand, factual development will be necessary to resolve these and any other tolling issues that may arise.

## V.

In summary, we reaffirm the holding of *Bean v. Crocker National Bank*. ADEA grievants in deferral states have up to 300 days within which to file their notice or charge. We also conclude that the district

---

of oral notification was erroneous when there was a later date of written notification and uncertain events between the two dates. The court emphasized that especially on summary judgment, the date of termination must appear without ambiguity. *Id.* at 1157. In *Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785 (5th Cir. 1980), the Fifth Circuit distinguished *Clark* on the basis that in *Clark* only oral notice was involved, whereas in *Coke* there was formal written notice of termination and no ambiguity. *Coke*, 616 F.2d at 788.

20. Although Aronsen does not raise the issue of equitable tolling as a distinct issue on appeal, it was before the district court because it rendered its dismissal under the assumption that ADEA filing periods are subject to equitable tolling. The issue is also interconnected with the same facts and arguments as the accrual date issue. Consequently, Zellerbach suffers no prejudice. *Cf. United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) (newly-raised issue reviewable where purely one of law since other party not prejudiced thereby); *Krause v. Sacramento Inn*, 479 F.2d 988, 989 (9th Cir. 1973) (new issue reviewable when raising sig-

nificant question of general importance). Moreover, the circumstances and argument surrounding the contested notice date suggest that equitable tolling issues are directly implicated on appeal.

21. We indicated in *Naton* that there were at least two forms of equitable modification: (1) equitable tolling focusing on the plaintiff's excusable ignorance; and (2) equitable estoppel focusing on the conduct of the defendant. *Naton*, 649 F.2d at 696.

22. In some of the equitable estoppel cases, the employer's conduct was found to hold out the possibility of reinstatement or otherwise to "lull" the employee into foregoing a timely filing. *See Wilkerson*, 621 F.2d at 1045–46 (employee allegedly misled as to reason for discharge); *Coke*, 640 F.2d at 595–96 (company misrepresentations that employee's demotion would be remedied); *Bonham*, 569 F.2d at 192–93 (company letter expressing optimistic view that company would find alternative employment within company for employee).

court erred in granting Zellerbach's motion for summary judgment on the filing deadline issue. The record on appeal indicates that factual dispute exists concerning both the date Aronsen knew or should have known of the alleged unlawful practice and the question of equitable modification.

REVERSED and REMANDED for proceedings consistent with this opinion.