The ALPINE LAKES PROTECTION SOCIETY, a non-profit corporation, Plaintiff,

v.

U.S. FOREST SERVICE, an agency of the United States and Plum Creek Timber Company, a limited partnership, Defendants.

No. C93–600R.

United States District Court, W.D. Washington, at Seattle.

Oct. 18, 1993.

479

Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, WA, for plaintiff.

Robert Maxwell Taylor, U.S. Attorney's Office and John William Hempelmann, Cairncross & Hempelmann, P.S., Seattle, WA, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's motion for summary judgment and for permanent injunction,[1] and on defendants' motions for summary judgment. Having reviewed the motions together with all documents filed in support and in opposition, and having heard oral argument, the court finds and rules as follows:

### I. BACKGROUND

On July 7, 1992, the United States Forest Service ("Forest Service") determined to grant a "Private Road Special Use Permit"

1. Because Plum Creek Timber Company has stipulated that until the district court renders its decision on the merits or until June 1, 1994, whichever is earlier, no ground disturbing activities authorized by the Big Boulder special use permit will commence, and further that it will provide plaintiff with notice of any ground disturbing activities authorized under other requests for access roads in the area, plaintiff has stipulated to the withdrawal of its motion for preliminary injunction.

to Plum Creek Timber Company ("Plum Creek") for a temporary access road across National Forest lands. When issued, the permit will allow Plum Creek to build, maintain, and use a 0.23 mile road for access to its property for a 5–year period to conduct timber management activities related to its "Big Boulder" project. This access request is one of seven submitted by Plum Creek for access roads in or near the Alpine Lakes area, as follows:

| Project Name | Length of Road | Application Date |
|---|---|---|
| Big·Boulder | 1200 feet | 1/23/90 |
| Big Bend | 2480 feet | 2/26/90 |
| Bell Ridge | 2500 feet | 11/14/90 |
| Sasse | 3511 feet | 2/26/90 |
| Hex | 150 feet | 2/26/90 |
| Peaches Ridge | 3909 feet | 2/21/90 |
| Taneum Ridge | 5000 feet | 2/21/90. |

Administrative Record ("AR") 49, 186–87. The Forest Service made its decision to issue a permit for the Big Boulder access road after concluding that neither a formal environmental assessment ("EA") nor an environmental impact statement ("EIS") was required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., because the access road qualified for a categorical exclusion ("CE") under "class 2" of its internal rules.[2] AR 229–30, 441–43. An administrative appeal filed by the Alpine Lakes Protection Society ("ALPS") was denied and a second level of discretionary review declined. AR 235–46, 357–61. ALPS subsequently filed this action seeking to compel the Forest Service to consider the connected and cumulative environmental effects associated with the Big Boulder project and the six additional projects for which access road permit applications are pending.[3] ALPS now moves for summary judgment on the ground that, in deciding to grant a permit for the Big Boulder access road, the Forest Service improperly limited its environmental consideration to the 0.23 mile of road across federal land alone. Defendants Plum Creek and U.S. Forest Service move for summary judgment on the ground that, because it was not arbitrary and capricious, the Big Boulder decision must be affirmed.

## ·II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 630–31 (9th Cir.1987). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir.1981). The court concludes that there is no such dispute here.

### B. *NEPA—Standard of Review*

Review of an agency's determination not to prepare an initial EIS is governed by the arbitrary and capricious standard. *Greenpeace Action v. Franklin*, 982 F.2d 1342, 1350 (9th Cir.1992) (citing *Marsh v.*

---

**2.** A categorical exclusion means "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required". 40 C.F.R. § 1508.4. In the instant case, the Forest Service found that the proposed action fell within the category "temporary and other low standard roads such as traffic service level 'D' roads", which qualify for categorical exclusions. *See* 50 Fed.Reg. 26081 (June 24, 1985).

**3.** A decision was issued with respect to the Hex Trail permit on June 30, 1993. A biological evaluation prepared by the Forest Service dated January 28, 1992, reflects that draft environmental assessments or categorical exclusions had been prepared for all seven applications and that in all seven cases tentative decisions had been made to issue temporary road permits. AR 169.

*Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). The arbitrary and capricious standard requires a court to ensure that an agency has taken the requisite 'hard look' at the environmental consequences of its proposed action and to carefully review the record to ascertain whether the agency decision is "founded on a reasoned evaluation 'of the relevant factors'". *Marsh,* 490 U.S. at 378, 109 S.Ct. at 1861 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *Greenpeace,* 982 F.2d at 1350. Once a court is satisfied that an agency's exercise of its discretion is truly informed, it must defer to the agency's reliance on the reasonable opinions of its own qualified experts even though the court might find the contrary views of different experts more persuasive. *Marsh,* 490 U.S. at 377, 109 S.Ct. at 1861 (quoting *Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976)); *Greenpeace,* 982 F.2d at 1350.

■ The focal point for judicial review is the administrative record already in existence, not the new record made in the reviewing court. *Seattle Audubon Society v. Moseley,* 798 F.Supp. 1473, 1477 (W.D.Wash. 1992) (citing *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1159 (9th Cir.1980)), *affirmed,* 998 F.2d 699 (9th Cir.1993). A court may, however, consider evidence outside the administrative record for certain limited purposes, such as to explain the agency's action or to determine whether its course of inquiry was insufficient or inadequate. *Moseley,* 798 F.Supp. at 1477 (citing *Love v. Thomas,* 858 F.2d 1347, 1356 (9th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989)); *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988). Plum Creek's motion to strike the declarations submitted by ALPS in support of its motion for summary judgment is therefore denied.

## C. *Compliance with NEPA Requirements*

■ NEPA requires federal agencies to prepare an EIS for all "major federal actions significantly affecting the quality of the human environment". 42 U.S.C. § 4332(2)(C). While it is true that administrative agencies are given considerable discretion in determining the scope of an EIS, an agency is required to consider connected or cumulative actions in a single EIS to avoid dividing a project into multiple actions, each of which individually has an insignificant environmental impact, but which collectively have a substantial impact. *Thomas v. Peterson,* 753 F.2d 754, 758 (9th Cir.1985) (citing *Kleppe,* 427 U.S. at 409–10, 96 S.Ct. at 2730). 40 C.F.R. § 1508.25 discusses the required scope of an EIS and defines connected and cumulative actions, providing in pertinent part:

> To determine the scope of environmental impact statements, agencies shall consider 3 types of actions, 3 types of alternatives, and 3 types of impacts. They include:
>
> (a) Actions (other than unconnected single actions) which may be:
>
> (1) Connected actions, which means that they are closely related and therefore should be discussed in the same impact statement. Actions are connected if they:
>
> (i) Automatically trigger other actions which may require environmental impact statements.
>
> (ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.
>
> (iii) Are interdependent parts of a larger action and depend on the larger action for their justification.
>
> (2) Cumulative actions, which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement.
>
> (3) Similar Actions, which when viewed with other reasonably foreseeable or proposed agency actions, have similarities that provide a basis for evaluating their environmental consequences together, such as common timing or geography. An agency may wish to analyze these actions in the same impact statement. It should do so when the best way to assess adequately the combined impacts of similar actions or reasonable

alternatives to such actions is to treat them in a single impact statement.

(b) Alternatives, which include

(1) No action alternative.

(2) Other reasonable courses of actions.

(3) Mitigation measures (not in the proposed action).

(c) Impacts, which may be: (1) Direct; (2) indirect; (3) cumulative.

In its use of the word "shall", 40 C.F.R. § 1508.25 makes mandatory the consideration of connected, cumulative, and similar actions by an agency when determining the scope of an EIS. Thus, the question whether the Forest Service erred in failing to consider the impact of the other six projects for which permit applications are pending or the logging activity associated with the Big Boulder access road turns on whether those projects are connected, cumulative, or similar actions.

### 1. Connected Actions ·

■ ALPS first contends that, because Plum Creek's timber management activities constitute a connected action, the Forest Service abused its discretion in failing to consider those activities in determining that no EIS was required for the Big Boulder project and in concluding that the Big Boulder logging road qualified for a categorical exclusion.

The Ninth Circuit has held that where access road construction and contemplated timber harvesting are "inextricably intertwined" such that the timber harvesting could not proceed without the road and the road would not be built but for the contemplated harvesting, the Forest Service was required to consider the environmental effect of the timber cutting which the access road was being built to facilitate. *Thomas,* 753 F.2d at 759 (cited with approval in *Save the Yaak Committee v. Block,* 840 F.2d 714, 720 (9th Cir.1988)). This requirement extends to non-federal actions undertaken exclusively by private parties if the federal actions are so interrelated as to constitute "links in the same bit of chain". *Morgan v. Walter,* 728 F.Supp. 1483, 1493 (D.Idaho 1989) (quoting *Sylvester v. U.S. Army Corps of Engineers,* 884 F.2d 394 (9th Cir.1989)). *See also Port of Astoria, Oregon v. Hodel,* 595 F.2d 467,

480 (9th Cir.1979) (agency's EIS had to consider both the supply of federal power and the construction of a private magnesium plant that was to use the power); *Colorado River Indian Tribes v. Marsh,* 605 F.Supp. 1425, 1433 (C.D.Cal.1985) (agency's EIS had to consider both the federal action of stabilizing a river bank and the private housing to be built as a result). While defendants argue that federal control of the connected action was critical to the courts' reasoning in decisions such as *Thomas,* a careful examination of these cases reveals that federal control was not a factor articulated by the courts in reaching their conclusions. Rather, the courts' reasoning turned on the functional interdependence of the actions in question, *i.e.,* whether the actions at issue were "links in the same bit of chain". *See Morgan,* 728 F.Supp. at 1493.

■ The courts' reasoning is further supported by the language of the regulations themselves. As noted below, 40 C.F.R. § 1508.7 defines "cumulative impact" as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions". Both connected actions and cumulative actions may result in cumulative impacts. *Save the Yaak Committee,* 840 F.2d at 721. It follows that, where a cumulative impact is involved, the question whether the environmental impact of the related action must be considered does not turn on whether that action is federal or non-federal in nature.

In the instant case, there is no dispute that the sole purpose of the Big Boulder access road is to facilitate Plum Creek's timber management activities. Because it depends solely on Plum Creek's logging activities for its justification and is an "interdependent part" of Plum Creek's Big Boulder timber management activities, the Boulder Creek access road and the timber management activities are connected actions. 40 C.F.R. § 1508.25(a)(1)(iii). The impact of the logging activities for which the proposed access road is to be built must therefore be consid-

ered by the Forest Service in determining whether an EA or an EIS is required for the Big Boulder permit. Failure to consider the connected action on the basis that the access road alone qualified for a categorical exclusion resulted in a decision that was arbitrary and capricious.

## 2. Cumulative Actions

The question remains whether NEPA requires that all seven applications for access roads be considered in a single EIS on the basis that they are cumulative.[4] As noted above, cumulative actions are those "which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement". 40 CFR § 1508.-25(a)(2). A "cumulative impact" is

the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7. The record before the court supports the conclusion that the seven projects here at issue are cumulative in nature.[5]

First, the biological assessment prepared by the Forest Service with respect to the impact on biological species alone illustrates the potential for cumulative impact these projects have when taken together. For example, the biological evaluations, which analyzed the direct, indirect, and cumulative effects of granting all seven access road permits on proposed, endangered, threatened and sensitive wildlife species, found that the "indirect effects [on spotted owl habitat] from all projects are large, involving losses of suitable habitat on private land totalling 1812 acres". AR 173. In addition, the evidence before the court indicates that there is a similar potential for cumulative impact on other aspects of the environment. Dr. William Ferrell, a former member of the faculty of the School of Forestry at Oregon State University, observes that the effects of these projects potentially interact on a variety of scales and resources. For example, Big Boulder, Sasse, Bell Ridge and Hex lie close together within the Alpine Lakes Area such that there is potential for a cumulative effect on recreation in the Teanaway Recreation Area. Because Big Boulder, Sasse and Bell Ridge lie within the same watershed which drains into the Cle Elum River, there is also potentially a cumulative impact on water quality and fisheries in the area. That impact can be exacerbated, since roading and logging in mountainous terrain invariably in-

4. Defendants argue that the six other access requests are not yet subject to judicial review because administrative remedies have not been exhausted and a determination as to whether an EA or EIS will be needed has not yet been made. Where there is no statutory requirement of exhaustion of administrative remedies, however, the determination of whether to require exhaustion rests in the sound discretion of the court. *Morrison–Knudsen Co., Inc. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir.1987). Here, the statute itself contemplates "proposed actions", including those that are pending. *See National Wildlife Federation v. FERC*, 912 F.2d 1471, 1478 (D.C.Cir.1990) (an EIS need not delve into the possible effects of a hypothetical project, but need only focus on the impact of the particular proposal at issue and other pending or recently approved proposals that might be connected or act cumulatively with the proposal at issue) (citing *Kleppe*, 427 U.S. at 410 n. 20, 96 S.Ct. at 2730 n. 20); *National Wildlife Federation v. U.S. Forest Service*, 592 F.Supp. 931, 942 (D.Or.1984) (where the other projects were more than mere

speculation and were planned for the same geographical area, the EIS was required to consider all of the projects in the area). The court therefore rejects defendants' arguments that it cannot consider the question whether the Forest Service must prepare a single EIS considering the cumulative impact of the Big Boulder project together with that of the six other Plum Creek projects at this stage.

5. While ALPS argues only that the seven projects are cumulative, the court notes that these projects are also similar in both timing and geography. The access roads and the related timber management activities are generally within a few miles of one another (some are little more than a mile apart) within the same geographical area. The permit applications for these projects were filed within the same general time period and, with two exceptions, within a week of one another. Nothing in the record suggests that the projects were not contemplated to proceed within the same general timeframe.

volves some amount of erosion. Declaration of William Ferrell, at 4–6.

The Forest Service concedes, however, that except for the biological evaluations, it did not consider the possibility of cumulative impacts on any other aspect of the environment. Forest Service Response, at 6. The NEPA process is intended to help public officials make decisions that are based on an understanding of environmental consequences, and to take actions that protect, restore, and enhance the environment. 40 C.F.R. § 1500.1(c). *See also* 42 U.S.C. § 4332(2)(E) (federal agencies shall study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources). The failure to even consider whether there is a potential for cumulative impact on any aspect of the environment except wildlife species as a result of these projects cannot be characterized as a "truly informed exercise of discretion", nor can it be said to amount to the requisite 'hard look' at the environmental consequences of granting the permits in question. *See Marsh,* 490 U.S. at 377, 109 S.Ct. at 1861. It is this failure to even consider whether there is the potential for any cumulative impact as a result of the connected and cumulative actions that makes the Forest Service decision arbitrary and capricious. *See Seattle Audubon Society,* 798 F.Supp. at 1483 (the failure to consider a relevant factor is in itself arbitrary and capricious).

### D. *ANILCA Requirement of Reasonable Access*

■ Defendants argue, nevertheless, that a finding that the Forest Service is required to consider the environmental impact of such connected and cumulative actions in determining whether an EIS is necessary is precluded by the Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3101, *et seq.* (ANILCA), which requires the Forest Service to grant Plum Creek access across Forest Service lands to its inholdings. Where two statutes are in apparent conflict, however, they should be read to give effect to each, if such a reading is possible while pre-

serving their sense and purpose. *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). ANILCA provides:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with the rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a). That the Forest Service does not lack discretion in determining what is reasonable access is demonstrated both by the fact that the determination thereof lies within the Secretary's discretion and that the statute permits the Forest Service to establish "terms and conditions" for the use of any such road. *See also* 1980 U.S.Code Cong. & Admin.News at 5070, 5254 (Congress intended that inholders have the right of access to their lands subject to reasonable regulation by the Secretary of Agriculture in the case of National Forests).

As noted above, the NEPA process is intended to help public officials make decisions that are based on an understanding of their environmental consequences. 40 C.F.R. § 1500.1(c). The court finds that, in this particular context, NEPA simply requires consideration by the Forest Service of the environmental impacts in determining what is reasonable access across National Forest lands pursuant to ANILCA. *See* 42 U.S.C. § 4332(1) (the policies, regulations, and public laws of the United States shall be administered in accordance with the policies set forth in NEPA); 6 Fed.Reg. 27410 (June 14, 1991) (it is not necessary that Forest Service regulations implementing ANILCA require compliance with NEPA because compliance with NEPA is required for all Forest Service land management actions as set forth in 36 C.F.R. Part 219). The court therefore concludes that ANILCA's requirement that the Forest Service grant reasonable access across Forest Service lands to inholders does

not preclude compliance with the requirements of NEPA as set forth above.

### III. CONCLUSION

NOW, THEREFORE, defendants' motions for summary judgment are DENIED, plaintiff's motion for summary judgment is GRANTED, and this matter is remanded for further proceedings consistent herewith.