**WASHINGTON TRAILS ASSOCIATION, et al., Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, et al., Defendants,**

and

**Northwest Motorcycle Association, Intervenor–Defendant.**

**No. C95–877R.**

United States District Court, W.D. Washington.

June 12, 1996.

Karl Frederick Forsgaard, Mercer Island, WA, for Washington Trails Association, American Hiking Society.

Gregory Thomas Costello, Graham & James LLP/Riddell, Williams, P.S., Seattle, WA, for Giffod Pinchot Task Force, Willapa Hills Audubon Society, Columbia Gorge Audubon Society, Emergency Trails Committee.

Norman L. Winn, Seattle, WA, for Washington Wilderness Coalition, Mountaineers, Cascadians, Ptarmigans.

Roger D. Mellem, Foster Pepper & Shefelman, Seattle, WA, for Sierra Club.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Maria A. Iizuka, U.S. Department of Justice, General Litigation Section, Sacramento, CA, for U.S. Forest Service, Department of Agriculture, Daniel R. Glickman, Jack Ward Thomas, Jr., John E. Lowe, Ted C. Stubblefield, Harry L. Cody.

John J. McFadden, Moore & McFadden, Chartered, Boise, ID, for Northwest Motorcycle Association.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on cross-motions for summary judgment by plaintiff outdoor recreation and environmental organizations and by defendants United States Forest Service and other federal defendants. Having reviewed the motions together with all briefs and exhibits as well as the administrative record, and being fully advised, the court finds and rules as follows:[1]

## I. FACTUAL BACKGROUND

This case involves a proposal by defendant United States Forest Service ("USFS") to reconstruct and relocate certain portions of two trails, the Langille and Juniper Ridge Trails ("Langille/Juniper Trails). These trails run along high alpine ridges in an inventoried roadless area of the Randle Ranger District known as the Dark Divide. The Randle Ranger District is in turn part of

---

1. The court declines to hear oral argument on the grounds that it is unnecessary. The parties' briefing is lengthy, well supported by exhibits, declarations and references to the administrative record, and thoroughly addresses all of the issues.

the Gifford Pinchot National Forest ("GPNF") in the state of Washington. Although the Dark Divide was a candidate for wilderness designation in 1984, it was not included in the federal legislation enacted that year, and remains the largest unprotected roadless area in western Washington.

The Langille and Juniper Ridge Trails have been open to motorized or Off-Road Vehicle ("ORV") use for over thirty years. However, trail conditions are rugged and steep enough to discourage all but experienced motorcyclists able to handle difficult terrain. The USFS now proposes to reconstruct and relocate parts of both trails to reduce long term maintenance needs and to mitigate resource damage. Completion of this work would also have the effect of facilitating motorcycle and other user access. Other users include hikers, bicyclists, horses and llamas. The cost of the project is $167,-000, 70% of which would be paid with funds from the Washington State Interagency Committee for Outdoor Recreation ("IAC"). The IAC funds trail projects through use of state gas taxes and motorcycle license fees.

In January of 1993, the Randle District Ranger signed a Decision Memo for the proposed project, A.R. 1521, concluding that it was categorically excluded from review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, under Category 31.2, subsection 1 regarding construction and reconstruction of trails. FS Handbook 1909.15. The Forest Supervisor and the Regional Forester both affirmed the District Ranger's decision. A.R. 1650, 1706.

Plaintiffs, a group of state and national outdoor recreation and environmental organizations, filed suit alleging that the USFS, the United States Department of Agriculture and other individual defendants [2] had violated several laws including NEPA, the National Forest Management Act ("NFMA") and two executive orders in pursuing the proposal to reconstruct and relocate the Langille/Juniper Trails.

Federal defendants and plaintiffs both move for summary judgment.[3] For the following reasons, the court concludes that plaintiffs' motion should be granted and federal defendants' motion should be denied.

## II. LEGAL DISCUSSION

### A. *NEPA Claim*

Plaintiffs contend that the Randle District Ranger erred on two grounds in concluding that the Langille/Juniper Trails project was categorically excluded from NEPA review.

### 1. *Existence of extraordinary circumstances*

First, plaintiffs argue that the District Ranger misapplied the USFS regulations governing categorical exclusions. The relevant regulations provide in part as follows:

A proposed action may be categorically excluded from documentation in an environmental impact statement (EIS) or environmental assessment (EA) only if the proposed action:

\* \* \* \* \* \*

b. Is within a category listed in sec. 31.1b or 31.2; and there are no extraordinary circumstances related to the proposed action.

30.3, section 1.b; 57 F.R. 43208. The District Ranger found that the project qualified for categorical exclusion because it involved construction and reconstruction of trails, Category 31.2, section 1, *id.*, and because it involved no extraordinary circumstances related to the proposed action. A.R. 1521.

Plaintiffs counter that an extraordinary circumstance is present in that the project is to be completed in an inventoried roadless area. *See* 30.3, section 2.e, which states that "[e]xtraordinary circumstances include, but are not limited to, the presence of the following: . . . e. Inventoried roadless area." 57

---

**2.** The individual defendants include Secretary of Agriculture Daniel R. Glickman, USFS Chief Jack Ward Thomas, Pacific Northwest Regional Forester John E. Lowe, GPNF Supervisor Ted Stubblefield and Randle District Ranger Harry L. Cody (hereafter collectively referred to as federal defendants).

**3.** Another litigant in this action is the Northwest Motorcycle Association ("NMA"), which was granted leave to intervene as a defendant. The NMA joins in federal defendants' motion for summary judgment.

F.R. 43208. Federal defendants respond that, according to the language of 30.3, section 1.b. quoted above, the extraordinary circumstances must be *related to the proposed action*, and that the proposed maintenance of the two trails is not related to the inventoried roadless character of the area. Plaintiffs in turn respond that there is a relationship because the project is to occur inside an inventoried roadless area.

The parties do not cite any law to guide the court's interpretation of the provision at issue.[4] Federal defendants contend that the court should defer to the USFS interpretation, while plaintiffs point to what they contend is the plain meaning of the language. Plaintiffs argue that the language does not support the USFS interpretation in this case.

The court recognizes that an agency's interpretation of its own regulations governs unless plainly erroneous or inconsistent with those regulations. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850–51, 104 L.Ed.2d 351 (1989). Nevertheless, having carefully examined the language at issue, the court agrees with plaintiffs that the USFS interpretation does not accord with the plain language of the regulation, which indicates that a categorical exclusion is inappropriate when "the presence of ... [i]nventoried roadless areas" is related to a proposed action. In this case, the proposed project is located within an inventoried roadless area. Thus, there is a relationship between the extraordinary circumstance alleged, *i.e.*, the presence of an inventoried roadless area, and the proposed action, *i.e.*, the Langille/Junipers Trails project to be carried out within that roadless area. In such a situation, the USFS regulations indicate that at least an EA is required.

### 2. *Existence of Significant Effect*

Even assuming that the USFS interpretation of its regulations is acceptable and that a categorical exclusion might properly be invoked, plaintiffs argue that such an exclusion is inapplicable in this case because the project will or, at minimum, may have a significant effect on the environment such that defendants are required to do an EIS or at least an EA.

The scope of review of an agency's factual determination is quite restricted. The court can only reverse a decision by the USFS not to do an EIS or EA if that decision was arbitrary and capricious. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377–78, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989); *Greenpeace Action v. Franklin*, 982 F.2d 1342, 1350 (9th Cir.1992).

While the arbitrary and capricious standard gives due deference to agency expertise, it still requires the court to make sure that an agency has taken a "hard look" at the environmental consequences of its proposed action and to carefully review the administrative record to determine whether the agency decision is based on a reasoned consideration of those consequences. *Marsh*, 490 U.S. at 373–74, 109 S.Ct. at 1859; *Greenpeace Action*, 982 F.2d at 1350.

Judicial review should focus on the administrative record. However, a court may consider evidence outside the record if necessary to explain the agency's action or to determine whether the agency's inquiry was insufficient or inadequate. *Alpine Lakes Protection Society v. United States Forest Service*, 838 F.Supp. 478, 481 (W.D.Wash. 1993); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988).

Plaintiffs' objections under NEPA all revolve around the environmental impact of ORV use of the trails in question. Plaintiffs maintain that the USFS refused to take the requisite "hard look" at the potential environmental consequences of the proposed action, and hence failed to base its decision-making on a reasoned consideration of the relevant factors.

Plaintiffs' objections may be broken down into three categories, although they are all related:

### a. *Connected actions*

In its more recent review of the Langille/Juniper Trails project, the USFS has

---

4. Federal defendants cite a number of cases involving categorical exclusions, but the factual circumstances in those cases are all readily distinguishable or inapposite.

sought to characterize the project as an isolated instance of trail relocation and reconstruction of small portions of the trails to remedy resource damage and to facilitate future maintenance. But this project was originally part of a more comprehensive consideration of the future of the McCoy Project Planning Area, which includes the two trails in question. Then, on October 6, 1992, the District Ranger sent a memorandum to interested parties stating that "[s]ince these trail projects are not closely connected to the proposed timber harvest and road construction which are the basis of the McCoy EIS, we have decided to handle the trail reconstruction as a separate analysis and decision." A.R. 1392. *See also* A.R. 1523.

Because the Langille/Juniper project was deemed to be entirely separate from the McCoy project, the District Ranger did not address the McCoy trail proposal when he issued the decision memo three and a half months later finding that the Langille/Juniper project was categorically excluded from further NEPA review. On appeal, the Forest Supervisor concluded that the District Ranger did not have to consider any proposed ORV trail developments which were part of the McCoy EIS because they "are not considered 'foreseeable' until such time as a decision is reached through that analysis process." A.R. 1652.

Plaintiffs argue that the USFS's position has no merit because the McCoy project includes a plan for building an ORV trail which would connect the Langille and Juniper Ridge trails, creating the possibility of a 30-mile loop trail. They contend that this additional project is a connected action which must be considered in conjunction with the project at issue here because it has the potential for markedly increasing ORV use on

the Langille/Juniper Trails, and thus increasing the environmental impact.

Plaintiffs also point out two other proposed projects in the vicinity which should be considered connected or cumulative actions affecting the potential extent of the environmental impact caused by the proposed Langille/Juniper project. Across the Cispus River from the Langille/Juniper Trails and capable of being connected by a relatively short trail is a proposed network of ORV trails in the Blue Lake area. *See* Dec. of Ira Spring, Ex. I, which is a copy of a map of the Randle Ranger District showing the relationship between the Langille/Juniper Ridge Trails and the Blue Lake area. The Blue Lake ORV proposal is currently the subject of an environmental assessment.[5] Spring Dec., Ex. M.

Plaintiffs further point out that the Randle District applied to the IAC for money to do an environmental assessment concerning a proposed Green Mountain Extension trail which would link the Blue Lake ORV area with the Langille/Juniper trails. Spring Dec., Ex. J; Dec. of Karl Forsgaard, Ex. M.[6] On May 23, 1996, the Randle District issued a public comment scoping letter on a proposed Green Mountain Trail project. The letter indicated that the USFS planned to prepare an EA on the project to be published in late August for a 30-day comment period so that a Decision Notice could be signed by late September. Supp.Dec. of Ira L. Spring.

■ NEPA requires federal agencies to consider connected and cumulative actions when determining the scope of an EIS or EA. 40 C.F.R. § 1508.25; *Alpine Protection Society v. United States Forest Service*, 838 F.Supp. 478, 481–82 (W.D.Wash.1993); *Thomas v. Peterson*, 753 F.2d 754, 758 (9th Cir.1985). In this case, the court finds that the USFS acted arbitrarily in failing to con-

---

5. Although the environmental assessment of the proposed Blue Lake ORV area is not part of the administrative record, the court can take notice of its existence in order to determine whether the USFS considered all relevant factors in determining the potential significance of the environmental impact resulting from the Langille/Juniper Trails project. *See, e.g., Alpine Lakes*, 838 F.Supp. at 481.

6. Federal defendants respond that the proposed Green Mountain Extension trail does not link the two areas. While this may be true, the Green Mountain Extension trail would link the Blue Lake area to the Boundary Trail, which in turn connects the Langille and Juniper Ridge Trails. Therefore, the result is the same, *i.e.*, the Green Mountain Extension trail would allow ORV passage from the Blue Lake trail system to the Langille/Juniper Ridge Trails.

sider the environmental impact of the Langille/Juniper Trails project in conjunction with other proposed ORV trail developments in the area including the Blue Lake ORV area, the Green Mountain Trail project and the connecting trail between the Langille and the Juniper Ridge Trails in the McCoy project planning area. Clearly the Langille/Juniper Trails project does not exist in isolation if the additional proposed ORV trail projects in the area may all be connected. The environmental significance of the Langille/Juniper Trails project cannot be accurately assessed unless the potential for increased use resulting from the cumulative impact of the projected network of ORV trails planned for the Randle Ranger District is carefully considered.

#### b. *User allocation*

In their appeals of the District Ranger's Decision Memo regarding the Langille/Juniper Trails project, plaintiffs urged the USFS to examine the issue of user allocation in view of increased ORV traffic on the two ridgetop trails resulting from the project. Plaintiffs contended that this increased use would have a significant impact on soil, vegetation, wildlife and nonmotorized users.

In his original Decision Memo, A.R. 1522, the District Ranger invoked the 1990 Forest Plan for the GPNF in support of continued ORV use:

> The Gifford Pinchot Land and Resource Management Plan identifies the need to manage these trails for semi-primitive motorized access.... Reconstruction of these two trail systems is specifically mentioned.... This project would maintain these trails to the motorized standard specified in the Forest Plan.

The District Ranger also commented that "[t]he decision of how the trail system would function was made with the signing of the Record of Decision" adopting the 1990 Forest Plan. A.R. 1525.

7. As the decision on the appeal from the Forest Plan explained:

> In regard to the adequacy of disclosure of impacts to trails, the effects of alternatives on trails are disclosed in the FEIS.... The level of environmental analysis in the FEIS is consistent with the broad programmatic nature of

In response to plaintiffs' appeal, the Forest Supervisor reiterated that "[t]he proposed project does *not* deal with allocation of use. Nor does it propose to modify the use which is directed in the Forest Plan." A.R. 1650 (emphasis in original). In a later letter to plaintiffs' counsel, the Forest Supervisor further explained the USFS refusal to consider the issue of user allocation:

> The concerns surrounding user *allocation* in the Dark Divide dated back to the programmatic analysis of the [1990 Land and Resource Management Plan for the GPNF] and was considered neither new nor extraordinary, nor within the scope of the analysis. The project does not change current user allocation and does not preclude future changes to land use designation, i.e., Wilderness designation.

A.R. 2235 (emphasis in original).

The Forest Plan to which the District Ranger and the Forest Supervisor referred is the 1990 document setting forth the overall management stratagem for the GPNF over the next ten to fifteen years. A.R. 800. As the Forest Supervisor indicated, concerns were voiced at that time and appeals were taken on the very issue raised in this case, namely the advisability of and conditions surrounding ORV access to the Langille and Juniper Ridge Trails. What the Forest Supervisor fails to mention is that the appeals were dismissed on the grounds that the Forest Plan was a programmatic document which simply identified possible projects. Instead, the USFS promised "a closer site-specific look at projects and activities" pursuant to the NEPA process as they were planned for implementation. Specifically, the USFS promised that "decisions on whether or not to close specific trails to a particular user type will receive site-specific analysis." A.R. 1023–1024.[7]

> the LRMP. The LRMP sets the stage for project or activity review but does not provide the last word. *In order to fulfill the statutory obligations arising from the NEPA, it is necessary to take a closer site-specific look at projects and activities.*
> A.R. 1023 (emphasis supplied).

■ Given the USFS's determination not to review user allocations with regard to specific trails at the time of the Forest Plan in 1990 and its concurrent promise to do site-specific analysis in the future, the USFS cannot simply hark back to the proposed user allocation in the Forest Plan as a final decision. It is hardly fair to ward off objections to a proposed project by assuring future consideration, and then decline to revisit the issue later on the grounds that it has already been decided.

The USFS accordingly must address the issue of whether user allocation on the two trails involves a significant environmental impact. Because the court discusses the possible impact on wildlife, soil and vegetation later on in this Order, the discussion at this point is limited to the human environment.

There is no doubt that ORV use on the Juniper and Langille Ridge Trails, particularly the potential for increased use, has occasioned controversy. The administrative record is replete with comment letters expressing heated opposition to ORV use of the two trails on the grounds, among others, that nonmotorized users cannot tolerate the noise and disruption allegedly associated with ORV use.

The District Ranger and the Forest Supervisor both recognized that the rate of use had to be considered in determining whether the Langille/Juniper Trails project would have a significant environmental impact. The District Ranger commented that the difficulty of the trails would limit users, that current use was estimated at 20 people per week, and that within the next ten years, use was estimated to rise by 20% to 24 people per week. A.R. 1526. The Forest Supervisor also accepted the same figures. A.R. 1652.

Neither the District Ranger nor the Forest Supervisor explained how the estimated increase in use was calculated. In view of the USFS's failure to consider the effect of any other proposed ORV projects in the area on use of the Langille/Juniper Trails, the court must conclude that the USFS did not take into account possible other sources of and reasons for increased use stemming from those proposals.

Plaintiffs believe that if the Langille/Juniper Trails project and other connected ORV trail projects are completed, ORV use of the former trails will increase much more than projected by the USFS because the area will become a destination for ORV users from a wide geographic area.[8] Any significant increase in ORV use of the Langille/Juniper Trails would, plaintiffs believe, drive hikers out completely and would have a significant detrimental impact on the environment.

■ Plaintiffs point to Executive Order 11644, which addresses the use of ORVs on public lands and requires the establishment of policies and procedures to monitor and control ORV use so as to protect resources, promote safety among users and minimize user conflicts. Executive Order 11989 in turn gives agency heads discretion to close public lands to ORV use to protect environmental, cultural or historic resources. As federal defendants acknowledge, these executive orders "share goals which also underlie NEPA." Memo in Supp. of Mot. for Summ. Jdgt., p. 16. Clearly, proper planning and assessment in support of those goals can only take place when the USFS has considered all relevant factors surrounding the issue of user allocation and ORV use on the Langille/Juniper Trails, including all factors which may portend increased use and user conflict in the future. The court concludes that the USFS is clearly obligated to consider the impact of proposals for connecting trails on the user allocation issue.[9]

---

8. As federal defendants point out, even now the Randle District has 255 miles of trails of which 60% are open to motorized uses. Dec. of Maria A. Iizuka, p. 2, ¶ 3(a).

9. Plaintiffs also point to the work of the Gifford Pinchot Trails Task Force ("TTF"). A citizens advisory committee composed of people representing various trail user groups, the TTF was established by the USFS in June of 1987 to assist in the forest planning process and met until 1992. A.R. 208. In a letter written in August of 1988, the TTF informed the district rangers that it was unable to agree on the management of the trails for motorized use in the Dark Divide Roadless Area. The TTF did, however, recommend a seasonal restriction on motorized use until August 15, which would permit hikers about a month of access to ORV-free trails. A.R. 597. After reviewing the TTF recommendation, the

### c. *Mountain goats*

Plaintiffs contend that the USFS has failed to adequately consider the potential harm to the high alpine environment through which the Langille/Juniper Trails run, including damage to soil, vegetation and wildlife. Again the USFS cannot accurately assess the threat of such harm until it squarely considers all of the factors which might contribute to increased ORV use of the trails. As discussed above, the court finds that the USFS failed to do so.

But even assuming minimal increased use in keeping with the USFS estimate, there is one species mentioned in the administrative record which the USFS has failed to consider in what appears to be an arbitrary dismissal of evidence of an existing threat of harm.

In 1985, the Washington Game Department published a study entitled "Off–Road Vehicle Impacts to Wildlife Species on the Gifford Pinchot National Forest." Forsgaard Dec., Ex. E. That study concluded that, of the big game species in GPNF, mountain goats were probably the most susceptible to disturbance from increased road access and interaction with humans. For that reason, the study recommended that ORV use should be prohibited in areas of mountain goat habitat.[10]

▋ The ORV impact study itself is not part of the administrative record before the court. However, a letter from the Forest Supervisor dated December 22, 1986 which is found in the administrative record indicates that the study "will be used as an information source for the Forest Trail Plan." A.R.

83. There is accordingly no question that this study was known to the USFS at the time it drew up the plans for the Langille/Juniper Trails project, and that it can be considered by this court in determining whether the USFS considered all relevant factors under NEPA.

The administrative record also indicates that the Randle District biologist supported the closure to motorized use of the Langille and Juniper Ridge trails, among others, "primarily to enhance habitat effectiveness for Mountain Goats." A.R. 705. Defendants emphasize that a biological evaluation of the Langille/Juniper Trails project on proposed, threatened, endangered and sensitive ("PETS") wildlife and plants was completed in October of 1992 and found no significant cause for concern. A.R. 1407–1410. However, this study did not take into account the potential effect on mountain goats, which are not a PETS species, although they are considered a management indicator species in the Forest Plan. A.R. 797, LRMP p. III–3, Figure III–1.

Finally, plaintiffs argue that the Forest Plan itself states that "[o]ff-road vehicles . . . should not be permitted on mountain goat summer range" from April 15 to December 1. LRMP IV–130. But the map of mountain goat habitat featured in the FEIS for the Forest Plan does not include the Dark Divide area. A.R. 2298, FEIS p. III–76. Nevertheless, there is evidence in several places in the administrative record of mountain goats living in the area of the Langille and Juniper Ridge Trails in summer. *See* A.R. 705 (Ran-

---

Randle District Ranger agreed that rather than closing the Langille/Juniper trails to motorized use, the district would suggest a seasonal restriction, albeit one somewhat more flexible than a mandatory August 15 opening for ORVs. A.R. 704.

Despite these recommendations, the 1990 Forest Plan did not include any analysis of whether a seasonal restriction should be implemented nor did the USFS consider any such alternative in reviewing the Langille/Juniper Trails project.

10. A 1988 study appended to the Declaration of Roderick M. Jones as Ex. B, and entitled "Wildlife Evaluation Processes for ORV, Hiking, and Horse Backcountry Recreation Use in Washington Forests" by Glenn A. Sachet of the Washington Department of Wildlife also makes the point

that interaction with humans is disturbing to mountain goats:

> The interactions between mountain goats and backcountry recreationists are not well described. Johnson (1983) describes areas in the Goat Rocks Wilderness where goats tend to avoid some traditional ranges where hikers pass by on heavily used trails. The greatest potential concern is from the attempts of backcountry recreationists to view and photograph mountain goats. . . . In summary, increased access into goat habitat, particularly escape terrain, increases the potential for different types of disturbances by a variety of sources. The critical time period for these disturbances is during the kidding period and the first two to four weeks of life (April through mid-June).

dle District biologist recommendation that Langille and Juniper Ridge Trails be closed to ORVs to enhance mountain goat habitat); A.R. 950 (reference in 1991 wildlife and botanical survey of McCoy project planning area to mountain goat sightings along Langille and Juniper Ridges consistently over the past 5 to 7 years); A.R. 2400 (photograph of 5 mountain goats along Langille Ridge Trail taken by District Ranger in 1994).

■ Thus, evidence in the administrative record supports the premise that ORV use has a significant environmental impact on mountain goats, that the Langille/Juniper Trails project area provides summer habitat for mountain goats, and that studies of the issue have recommended closing mountain goat habitat to ORV use, including most notably the FEIS for the GPNF. None of this evidence was even mentioned in the USFS documents concluding that a categorical exclusion from NEPA requirements was appropriate. The court finds that the USFS's failure to consider the significance of the impact of ORV use on mountain goat habitat along the Langille and Juniper Ridge Trails was arbitrary and capricious. Given the importance of the 1990 Forest Plan in the planning process, the USFS must especially consider whether the failure to close the trails to ORV use violates the Forest Plan prohibition on ORVs in summer mountain goat habitat.

### B. *Plaintiffs' Other Claims*

In addition to their NEPA claim discussed above, plaintiffs also contend that defendants violated the National Forest Management Act ("NFMA") by not addressing their specific contentions about the proposed ORV trail plans for Langille and Juniper Ridges in their appeal from the 1990 Forest Plan. Plaintiffs further contend that the USFS violated Executive Orders 11644 and 11989 requiring continued monitoring of ORV use on public lands and efforts to minimize user conflict. Given the result reached on plaintiffs' NEPA claim, the court concludes that it

does not need to reach plaintiff's other claims. All of plaintiffs' substantive contentions and objections to the Langille/Juniper Trails project have been considered by the court and can be addressed by the USFS in the context of its review of the factors relevant to that specific project proposal under NEPA.

## III. CONCLUSION

In summary, the USFS decision not to conduct an EIS or EA in the face of evidence indicating the possibility of significant environmental impacts resulting from the proposed project was arbitrary and capricious and violated NEPA standards and requirements. As explained in detail above, the USFS's decision that the Langille/Juniper Trails project qualified for a categorical exclusion was not within the bounds of reasoned decisionmaking where relevant factors were either ignored totally or brushed aside summarily without the careful consideration to which those factors were entitled.

Plaintiffs' motion for summary judgment on their NEPA claim is accordingly GRANTED; defendants' motion for summary judgment is DENIED.[11]

---

11. In light of the court's decision that the USFS must comply with the requirements of NEPA before making a decision about the Langille/Juniper Trails project, the court does not anticipate that the USFS will proceed at this time with the bidding process and the selection of a contractor to complete the project. If the this assumption is not correct, the court reserves jurisdiction to entertain a motion for preliminary injunction by plaintiffs.