**NORTH CASCADES CONSERVATION COUNCIL; Washington Trails Association; The Mountaineers; Northwest Ecosystem Alliance; Sierra Club; The Wilderness Society; and Washington Wilderness Coalition, Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, United States Department of Agriculture; The Honorable Daniel R. Glickman, in his official capacity as Secretary U.S. Department of Agriculture; The Honorable Michael Dombeck, in**

his official capacity as Chief, U.S. Forest Service; The Honorable Robert Williams, in his official capacity as Regional Forester, Pacific Northwest Region; The Honorable Richard A. Ferraro, in his official capacity as Deputy Regional Forester, Pacific Northwest Region; The Honorable Sonny J. O'Neal, in his official capacity as Forest Supervisor for the Wenatchee National Forest; The Honorable Robert J. Sheehan, in his official capacity as District Ranger, Lake Wenatchee District of the Wenatchee National Forest, Defendants.

No. C99–889R.

United States District Court,
W.D. Washington,
at Seattle.

Aug. 31, 1999.

Andrew H Salter, Miller Nash Wiener Hager & Carlsen, Seattle, WA, for plaintiff.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, for defendant.

John J McFadden, Moore & McFadden, Chartered, Boise, ID, for am.

## ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

ROTHSTEIN, District Judge.

THE COURT has heard oral argument and has considered the papers filed in support of and in opposition to plaintiffs' motion for a preliminary injunction, including an amicus brief by certain outdoor recreation organizations.[1] Pursuant to Fed.R.Civ.P. 65, plaintiffs seek to preliminarily enjoin the defendants (collectively, the "Forest Service"), their employees, agents, or contractors, or anyone acting on their behalf, from constructing, proceeding with, and/or taking any further action on the Goose–Maverick Off–Road Vehicle (ORV) Tie Trail Project. The court GRANTS plaintiffs' motion for the reasons stated below.

## I. BACKGROUND

The purpose of the Goose–Maverick Off–Road Vehicle (ORV) Tie Trail Project ("Project") is to link the Goose Creek ORV campground to ORV trails in the Maverick Saddle area. AR 200, at 1. The Maverick Saddle is a popular destination because it facilitates access to a number of other trails in the Wenatchee National Forest's ORV trail system, which reaches from Lake Wenatchee to Lake Chelan. See AR 200, at 2; AR 597 (Recreation Trails Map). The Project involves constructing 3 ¼ miles of new trail, converting 2 ¼ miles of existing roads to trail use, constructing two trail bridges, and developing a day parking area across from the Goose Creek ORV campground. AR 200, at 1.

The Forest Service issued an Environmental Assessment ("EA") for the Project in February of 1997. In mid–1997, District Ranger Robert Sheehan issued a Decision Notice and Finding of No Significant Impact ("FONSI"), which authorized construction of the Project. Plaintiffs and others appealed the FONSI, contending that the Project received inadequate environmental review under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C). Their appeal was denied in November 1997.

Plaintiffs filed the present action in June of 1999, and now seek a preliminary in-

---

1. These organizations are Backcountry Bicycle Trails Club, Single Track Mind, Backcountry Horsemen of Washington, and Northwest Motorcycle Association.

junction. The court has before it the entire administrative record.[2]

## II. DISCUSSION

█ To obtain a preliminary injunction, plaintiffs must comply with one of two tests. Under the first test, plaintiffs must show: (1) irreparable injury; (2) probability of success on the merits; (3) the balance of equities in their favor; and (4) the granting of the injunction is in the public interest. *See Hells Canyon Preservation Council v. Jacoby*, 9 F.Supp.2d 1216, 1245 (D.Or.1998). Under the second test, plaintiffs must demonstrate either a combination of probable success on the merits and the possibility of irreparable harm or that serious questions are raised and the balance of hardships tips sharply in their favor. *See id.*

### A. *Irreparable Injury*

Plaintiffs argue that proceeding with the Project will damage the environment by blasting, clearing brush, and constructing two bridges, a parking area, and a cement block trail. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Plaintiffs need only raise " 'substantial questions whether a project may have a significant effect' on the environment." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir.1998) (citing *Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1150 (9th Cir.1998)).

Plaintiffs have raised substantial questions here, and the Forest Service has raised no serious argument otherwise. The primary issue for the court to consider, therefore, is the likelihood that plaintiffs will succeed on the merits.

### B. *Likelihood of Success on the Merits*

A court reviewing agency actions such as the Forest Service's decision to proceed with the Project based on the information contained in the EA must find that the agency's decision was arbitrary and capricious. *See Washington Trails Ass'n v. USForest Service*, 935 F.Supp. 1117, 1121 (W.D.Wash.1996). Although "the arbitrary and capricious standard gives due deference to agency expertise, it still requires the court to make sure that an agency has taken a 'hard look' at the environmental consequences of its proposed action and to carefully review the administrative record to determine whether the agency decision is based on a reasoned consideration of those consequences." *Id.*

Plaintiffs have raised numerous convoluted arguments as to why the Project received inadequate review under NEPA. The court finds merit in only two. The court finds that the Forest Service acted arbitrarily or capriciously by (1) failing to address the cumulative environmental impacts on the ORV trail system of this Project and two other proposals tied to the ORV trail system, and (2) failing to consider the Project's effects on wildlife outside of the narrowly defined "project area."

#### 1. *Cumulative Impacts*

Plaintiffs contend that the Forest Service should have considered in the same EA the cumulative impacts of this Project, the Ramona Area Trail and Campground Recreation Project ("Ramona Project"), and the Three Creeks Trail Project ("Three Creeks Project"). The Ramona Project would create, among other things,

---

**2.** As this court noted in *Alpine Lakes Protection Soc'y v. USFS*, 838 F.Supp. 478, 481 (W.D.Wash.1993), the focal point for judicial review is the administrative record already in existence, not the new record made in the reviewing court. The court may, however, consider evidence outside the administrative record for certain limited purposes, such as to explain the agency's action or to determine whether its course of inquiry was insufficient or inadequate. *Id.* The Forest Service's motion to strike extra-record materials submitted by plaintiffs [docket 27–1] is, therefore, denied.

a multi-use connector trail near the Ramona Park Campground, which is in the northeast portion of the ORV trail system. AR 574, at 1–3 (Ramona Project EA); AR 597 (Recreation Trails Map). The Three Creeks Trail Project would create, among other things, a multi-use tie-trail in the northern portion of ORV trail system. AR 573, at 1 (Three Creeks Project EA); *see* AR 597.

The regulations implementing NEPA require federal agencies to consider cumulative actions in the same EA. *See* 40 C.F.R. § 1508 .25(a)(2). Cumulative actions are those "which when viewed with other proposed actions have cumulatively significant impacts." *Id.; see Alpine Lakes Protection Soc'y,* 838 F.Supp. at 483. In determining whether a project will have a "significant" impact on the environment, an agency must consider "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts." 40 C.F.R. § 1508.27(b)(7); *see Blue Mountains Biodiversity Project,* 161 F.3d at 1214. *"Cumulative impact* is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions. . . ." 40 C.F.R. § 1508.7.

a. *Reasonable Foreseeability*

The Forest Service asserts that the Ramona Project was not "reasonably foreseeable" within the meaning of 40 C.F.R. § 1508.7, because public scoping of the Ramona Project began in the Fall of 1997, after the decision notice was signed for this Project. The Forest Service argues, therefore, that it need not have been considered in the Goose–Maverick Project's EA.

■ "Cumulative actions" may include "proposed actions." 40 C.F.R. § 1508.25(a)(2). A proposal "exists at that stage in the development of an action when

an agency . . . has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal and the effect can be meaningfully evaluated." 40 C.F.R. § 1508.23. An EIS, and by extension an EA, need not address actions that have not yet become proposals. *See Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 20, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

■ By the Forest Service's own definition, the Ramona Project was a proposal prior to the EA at issue here and, therefore, was reasonably foreseeable. The Forest Service listed the Ramona Project (as well as the Three Creeks and Goose–Maverick projects) in its Schedule of Proposed Actions ("SOPA") for the second quarter of 1996. AR 43, 45, 47. In the SOPA for the first quarter of 1997, the Ramona Project clearly involved the "objective . . . to reroute an ORV trail and trailhead to a better location, and provide adequate camping facilities." Third Salter Decl., Exh. 1, at 4. Although "public" scoping of this proposed action purportedly began in Fall of 1997, the Forest Service conducted "internal" scoping involving specialists prior to that time. *See* AR 374, at 5.[3]

b. *Sufficiency of Analysis*

The Forest Service also contends that the EA adequately considered cumulative impacts and determined that none existed. For example, with respect to the Three Creeks Project, the Goose–Maverick Project EA provides: "The Goose–Maverick Tie Trail proposal would *not affect any of* the analysis currently occurring for the [Three Creeks Project], and decisions for these two projects can be made fully independent of each other and are not *connected* actions." AR 351 (emphasis added).

Similarly, although the EA contains no reference to the Ramona Project, the ad-

---

**3.** The Forest Service does not contest the plaintiffs' assertion that the Three Creeks Project was reasonably foreseeable. The EA

mentions the Three Creeks Project specifically. AR 351.

ministrative record contains a note to the Goose–Maverick Project file in which a Forest Service Trail Manager opines that projects in the Chelan Ranger District, such as the Ramona Project, were too distant to merit analysis of cumulative environmental effects. AR 293 (noting that "trail projects in Chelan [with respect to such projects near Lake Wenatchee] certainly would not be *connected* actions") (emphasis added).

The record and other materials suggest that the ORV trail system in this case came about as the result of historic use of motorcycles in the area, AR 38, at H.3 (noting motor bike use in 1950's and that in 1970's and 1980's "[m]otor bike trail use bega[ ]n to sky rocket"), and subsequent ORV projects for which no environmental impact statement was ever written. *See* Decl. of Steven C. Davis at ¶ 2 (purportedly reviewing records for previous ORV trails in same system). Nothing in the administrative record suggests that any environmental impact statement has ever been filed with respect to the ORV system as a whole, or with respect to significant aspects of it. Within the NEPA scheme, however, any proposal adding to this ORV system that may adversely affect the environment must be examined in light of the entire existing system.

The proper reference point for a cumulative impacts inquiry is the entire ORV trail system, to which the Goose–Maverick, Three Creeks, and Ramona projects all are tied. *See* AR 597. That system is, by the Forest Service's admission, approximately 35 to 40 miles one-way distant from end to end, which would permit a motorized trail user to go from Lake Wenatchee to Lake Chelan in one day. AR 293. As is appar-

ent from studying the informational "Recreational Trails" map provided to visitors, significantly shorter loop opportunities also exist and would be facilitated by the construction of the three projects. *See* AR 597. The EAs for each of these projects acknowledge that they will increase traffic or facilitate increased traffic, which will be distributed throughout the system to greater or lesser degrees.[4]

The court recognizes that the determination of the extent and effect of cumulative impact factors and the identification of the geographic area within which this may occur is assigned to the special competence of the appropriate agency. *See Blue Mountains Biodiversity Project*, 161 F.3d at 1215. Nevertheless, it is clear that the projects will impact one contiguous area. *See* AR 597.

The Forest Service confuses the important distinction between "cumulative impacts and actions" and "connected actions." *Compare* 40 C.F.R. § 1508.7 (definition of cumulative impact) *with* 40 C.F.R. § 1508.25 (definitions of connected actions and cumulative actions, and requirement to consider direct, indirect, and cumulative impacts).

Actions are *connected* if they (i) "[a]utomatically trigger other actions which may require environmental impact statements," (ii) "[c]annot or will not proceed unless other actions are taken previously or simultaneously," and (iii) "[a]re interdependent parts of a larger action and depend on the larger action for their justification." 40 C.F.R. § 1508.25(a)(1). Connected actions are "links in the same bit of chain"; unconnected actions are "separate segments of chain." *Northwest Resource*

---

4. The Goose–Maverick Project, besides creating 3 ¼ miles of new trail, would also, according to the EA, facilitate the increase in motorcycle use in the Lake Wenatchee Ranger District by about 10 percent. AR 200, at 34. The Three Creeks Project EA predicts an average annual increase of use in the Three Creeks area, and the alternatives considered would disperse these new users in different ways throughout the trail system. AR 573, at 39–40. Further, the preferred Three Creeks alternative would create 8.8 miles of new motorized trail construction and 2.8 miles of new non-motorized trail construction. AR 573, at 39. The alternatives developed in the Ramona Project would facilitate or restrict motorized and non-motorized access to the ORV trail system in different ways. *See* AR 574, at 13 (Alternative Summary Matrix).

*Info. Ctr. v. Nat. Marine Fisheries Serv.,* 56 F.3d 1060, 1068 (9th Cir.1995). For example, if each project could exist without the other, such as a golf course and a proposed resort, then the projects are not connected. *Id.* Similarly, if one phase of a multi-phase project is independent of subsequent phases, i.e., it would be rational to undertake the first without ever undertaking the subsequent phases, then the phases need not be considered connected. *Id.*

■ Since the success or failure of one or all of the projects is not dependent upon the completion of the others, the Goose–Maverick, Ramona, and Three Creeks projects are not "connected" to one another. Nevertheless, each project proposes "tie-trails." These tie-trails relate to the same, larger area: the ORV trail system that "consists of the hub of one of the largest and most unique systems of interconnecting trail networks in the northwest." AR 38, at H.6. That is, though the three projects are not "connected actions," they each are physically related to the ORV trail system. They are *cumulative* actions, as defined in 40 C.F.R. § 1508.25(a)(2), and subject to an examination of cumulative impacts, under 40 C.F.R. § 1508.7.

The circumstances here are similar to those this court addressed in *Washington Trails Ass'n v. USFS,* 935 F.Supp. 1117 (W.D.Wash.1996). As in that case, this Project "does not exist in isolation if the additional proposed ORV trail projects in the area may all be connected. The environmental significance of the ... project cannot be accurately assessed unless the potential for increased use resulting from the cumulative impact of the projected network of ORV trails planned for the ... Ranger District is carefully considered." *Washington Trails,* 935 F.Supp. at 1123. The wrinkle with respect to the present project is simply that while the ORV trail

system to which the Goose–Maverick, Ramona, and Three Creeks projects tie already exists, the impact of the existing system, and whether it can bear an increase in use, has never been carefully considered. *Cf. Oregon Natural Resources Council v. Marsh,* 52 F.3d 1485, 1489 (9th Cir.1995) (quoting prior opinion in same case to note "[t]he synergistic impact of the project should be taken into account at some stage, and certainly before the last dam is completed").

Without examining the ORV trail system, the Forest Service cannot meaningfully measure cumulative environmental impacts in the fashion that NEPA requires.[5] The Forest Service cannot determine, for example, whether a 10–percent increase in traffic on the trail system is significant or insignificant. Thus, there is no support for the Forest Service's conclusion that a 10–percent increase throughout the ORV trail system or in particular portions of it would have no cumulative impacts.[6]

It is, of course, not necessary that every action, regardless of size or likelihood, be included in one EA. "The scope of an individual environmental impact statement may depend upon its relationships to other statements...." 40 C.F.R. § 1508.25. Moreover, the Forest Service may "tier" its reports; tiering "refers to the coverage of general matters in broader environmental impact statements ... with subsequent narrower statements or environmental analyses." 40 C.F.R. § 1508.28.

#### 2. *Analysis of ORV Impact on Wildlife*

Plaintiffs also argue that the EA improperly failed to consider the negative effects of increased motorized vehicle use on area wildlife outside of the narrowly defined "project area," which was defined as the area of ground-disturbing activity.

---

5. There is precedent for such a survey. *See* Third Salter Decl., Exh. 13 (Off–Road Vehicle Study, Gifford Pinchot National Forest (Wash.)).

6. See discussion of Forest Service's determination of the 10–percent figure, *infra* Section II.C.2.

AR 349. Plaintiffs contend that an assessment of effects on wildlife outside the project area is especially important because the Project and other parts of the ORV system lie within a Late–Successional Reserve ("LSR"), an area intended to "protect and enhance conditions of late-successional and old-growth forest ecosystems." AR 14, at C–9.[7] The court agrees.

The Forest Plan provides as follows:

Development of new facilities that may adversely affect Late–Successional Reserves should not be permitted. New development proposals that address public needs or provide significant public benefits ... will be reviewed on a case-by-case basis and may be approved when adverse effects can be minimized and mitigated.

AR 14, at C–17. Recreation areas in all land allocations are to be managed to minimize disturbance to species. AR 14, at C–6.

The EA recognized that a key issue was the "[i]mpacts of road and trail density on refugia for wildlife, and the maintenance of Late Successional and Riparian Reserves." AR 200, at 6. The EA concluded that the Project would have neutral or beneficial effects on the LSR. AR 200, at 46.

It is abundantly clear that the Forest Service thoroughly examined the direct and indirect effects on wildlife of the Project for the area of ground-disturbing activity. *See* AR 200, at 22–28; AR 98–109; AR 302–332; AR 338–44; AR 110–11; AR 411–12. It is similarly clear, however, that

the EA engaged in improper speculation as to the indirect and cumulative effects that the Project might have on wildlife in the area of the ORV trail system, of which the Project is a small, but relevant, piece.

■ The EA examines in a cursory fashion the cumulative effects of the Project on wildlife in adjacent areas of the ORV trail system:

Project analysis did include consideration of the potential cumulative effects on wildlife by trail use in the Mad River basin. The predicted increase in use on existing open and regularly used ORV trails was not judged to pose a significant change in disturbance patterns to wildlife and habitat over the current situation for areas within the zone-of-influence of established trails.

AR 374. The only support for this determination was the EA's incorporation by reference of programmatic documents about the areas through which the ORV trail system runs.[8] In oral argument, the Forest Service suggested that the 1990 Forest Plan's land allocations for ORV trails may have satisfied NEPA. This is not the site-specific "hard look" that NEPA requires. *See, e.g., City of Tenakee Springs v. Clough,* 915 F.2d 1308, 1313 (9th Cir.1990) ("Insofar as the TLMP [Tongass Land Management Plan EIS] relates to NEPA, it is a programmatic EIS providing management direction and general guidelines. It is not site-specific. We are cited to no provision of the TLMP that contains any cumulative environmental

---

7. For ease of reference, the following documents are referred to collectively as the "Forest Plan": The Wenatchee National Forest Land and Resource Management Plan and Record of Decision (1990), AR 9; and the Record of Decision for Amendments to the Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl and the Standards and Guidelines on Management of Habitat for Late–Successional and Old–Growth Forest Related Species Within the Range of the Northern Spotted Owl (1994), AR 14.

8. These documents include the following: the Watershed Assessment for Fire Recovery Analysis on the Tyi–Chi Watershed, AR 36; the Initial Assessment for the Chiwawa Late Successional Reserve, AR 37; the Watershed Assessment for the Entiat Analysis Area, AR 38; the Assessments for Late Successional Reserves and Managed Late Successional Areas of the Eastern Washington Cascade Province of the Wenatchee National Forest, AR 334a; the Forest–Wide Assessment for Late Successional Reserves and Managed Late Successional Areas on the Wenatchee National Forest, AR 334b; and the Chiwawa River Watershed Assessment, AR 525.

analysis of ... operating plans scheduled for implementation ....") (citations omitted).

Although the cited programmatic documents provide information about terrain and wildlife, they provide no insight whatsoever into whether existing use on the ORV trail system already jeopardizes LSR objectives, and what impact, if any, the anticipated increase in ORV use would produce. Several documents suggest limiting disturbances of meadows, ridge tops, riparian areas, deciduous tree habitat, and rock outcrops because such habitats are important to numerous wildlife species. *See* AR 9, at IV–80 to IV–91; AR 5, at 50–52 (Wildlife Evaluation Processes for ORV, Hiking and Horse Backcountry Recreation Use (Washington Department of Wildlife 1988)).

As plaintiffs point out, there is substantial indication that policymakers and the Forest Plan demand a meaningful examination of the damages that ORV use may cause to the environment. Executive Order 11644, as amended by Executive Order 11989, provides that agencies may close trails due to the adverse impacts of ORV use. AR 4. In a consultation on the Three Creeks Project, the United States Fish and Wildlife Service noted that "ORV activities can result in significant environmental degradation from disturbance to wildlife and survey and manage species, habitat fragmentation, and soil compaction and erosion." Third Salter Decl., Exh. 10, at 3; *see also* AR 25–35 (listing articles about effects of ORV use). The impact of ORV use upon wildlife, and upon LSR objectives, in this trail system was a question that needed to be asked and answered to satisfy the requirements of NEPA.

The EA predicts that there will be a 10–percent increase in the amount of use on the ORV trails in the Lake Wenatchee and Entiat Ranger Districts as the result of this Project. AR 200, at 46. Whether that increased use on existing trails will have an adverse effect on wildlife cannot be determined without an adequate study of ORV use on wildlife for the ORV trail system of which the Project is a part. Such a study does not exist in the administrative record.

The Forest Service acted arbitrarily and capriciously in failing to examine the effects of ORV use on wildlife outside of the narrowly defined "project area."

## A. *Other Issues*

While the court finds that plaintiffs' other arguments lack merit, it addresses certain arguments below to provide guidance to the parties regarding the proper scope of the EA.

### 1. *Consideration of Alternatives*

The EA considered two alternatives: (1) constructing the Project as proposed and (2) taking no action. According to plaintiffs, the preparation of only one alternative to the "no action" option renders selection of that alternative a foregone conclusion. Plaintiffs argue that a proper NEPA review requires consideration of a broader range of alternatives.

■ NEPA requires that the EA "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a). Contrary to plaintiffs' suggestion, NEPA does not require an agency to consider a minimum number of alternatives. *See Laguna Greenbelt, Inc. v. United States Dep't. of Transp.*, 42 F.3d 517, 524–25 (9th Cir.1994).

In this case, the Forest Service considered and dismissed at least four other alternatives that did not fit with the Forest Service's assessment of the purpose and need for the Project. *See* AR 200, at 7. In addition, in response to public comment on the EA, the Forest Service developed a third alternative that involved constructing the proposed trail, but not the proposed bridge. AR 348. These actions fulfilled

the Forest Service's obligation to consider alternatives.

### 2. Analysis of Current and Projected Trail Use

The Forest Service estimates that completion of the Project will increase motorcycle use on the ORV trails by 10 percent. AR 200, at 34. The Forest Service admits that this projection is a "best guess" by trail program managers in the Entiat and Lake Wenatchee Ranger Districts. AR 200, at 34. Plaintiffs argue that this "best guess" did not adequately account for current use on the ORV trail system and is not an adequate basis for a projection.

 The court defers to agency expertise on questions of methodology unless the agency has completely failed to address some factor, consideration of which was essential to a truly informed decision whether or not to prepare an environmental impact statement. *Inland Empire Pub. Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir.1993). Reasonable forecasting and speculation is implicit in NEPA. *See City of Davis v. Coleman*, 521 F.2d 661, 676 (9th Cir.1975).

The Forest Service based its assessment of current trail use on an analysis of trailhead registrations and trail counters, ORV patrol reports, campground fee collections, past historical trends, and local knowledge of district trail program managers. *See* AR 200, at 33. It based its future projections on the opinions of its district trail managers and on what it found to be relevant comparisons to other projects.[9]

The Forest Service's projection of increased use on the trail system as the

result of the Project was not arbitrary or capricious.

### III. CONCLUSION

The court hereby GRANTS the plaintiffs' motion for a preliminary injunction [docket 17–1].

---

9. The EA states:
 Motorcycle use on the ORV trails on the Lake Wenatchee Ranger District would likely increase by about 10% as a result of the construction of the Goose–Maverick Tie trail. This estimation of potential changes in use patterns in only a best guess by trail program managers on the Entiat and Lake Wenatchee Ranger District, and is based on

the assumption that improved trail conditions would make these trails more popular. . . . Any prediction of these changes in use patterns is speculative based on the best estimates of the district trail program managers.
AR 200, at 34. The EA also compares the Project to a 1992 project that added two miles to another ORV trail. AR 200, at 33.